1   COREY W. GLAVE (State Bar No. 164746)
    Attorney at Law
2   632 S. Gertruda Ave
    Redondo Beach, CA 90277
3   Phone: (323) 547-0472
    POAattorney@aol.com
4

5   Attorneys for Plaintiffs
    Santa Ana Police Officers Assn
6   and Gerry Serrano

7
                    UNITED STATES DISTRICT COURT
8
                   CENTRAL DISTRICT OF CALIFORNIA
9
                        SOUTHERN DIVISION
10

11  SANTA ANA POLICE OFFICERS        )   Case No. 8:22-CV-00118-CJC-DFM
    ASSOCIATION; GERRY SERRANO       )   The Hon. Cormac J. Carney
12                                   )   Courtroom 9B
              Plaintiffs,            )
13  vs.                             )   PLAINTIFFS' EX PARTE
                                     )   APPLICATION FOR REJECTION OF
14  CITY OF SANTA ANA, a Municipal   )   REMOVAL AND REMAND TO THE
    Corporation; SANTA ANA POLICE    )   ORANGE COUNTY SUPERIOR
15  DEPARTMENT, a public safety      )   COURT
    department; DAVID VALENTIN, Chief )
16  of Police; KRISTIN RIDGE, City   )   Judge:    Hon. Cormac J. Carney
    Manager; SONIA CARVALHO, City    )   Crtrm:    9 B
17  Attorney; JASON MOTSICK, Director of )  Date:     February 4, 2022
    Human Resources; DOES I-X, inclusive )  Time:     n/a
18                                   )
              Defendants.            )
19  _____ )

20

21      **TO ALL DEFENDANTS AND THEIR ATTORNEYS OF RECORD:**

22  **PLEASE TAKE NOTICE** that Plaintiffs Santa Ana Police Officers Association and Gerry

23  Serrano hereby apply to this Court, before the Hon. Cormac J. Carney in Department

24  9B of the aforementioned Court located at 411 West Fourth Street, Santa Ana,

25  California, for *ex-parte* relief seeking an order from this Court rejecting Defendants'

26  Notice of Removal and remanding the matter back to the Orange County Superior

27  Court as there is no proper basis for Defendants' Notice of Removal.

28          *Ex-parte* relief is necessary to prevent severe prejudice to the Plaintiffs

                                    1

Defendants have filed Motions to Dismiss, to Strike and/or for More Definite Statement and have scheduled the hearings on said motions before a time that Plaintiffs can bring a notice motion to reject removal and/or remand to the state court.  This action does not involve any federal question, does not involve any diversity of parties, and the removal was not filed in a timely fashion.

Plaintiffs have sought to obtain a stipulations of Defendant City of Santa Ana, Santa Ana Police Department, Kristine Ridge, Sonia Carvalho and Jason Motsick, to remand the action, but have been met by delayed and non-definitive responses.  It is believed this is due to Plaintiffs' deadline for filing opposition pleadings quickly approaching.

Opposing counsel for Defendants City of Santa Ana, Santa Ana Police Department, Kristine Ridge, Sonia Carvalho and Jason Motsick were informed, on multiple occasions that Plaintiffs would be brining this ex parte application, and opposing counsel did not indicate whether or not they would be opposing it. (See Exhibit 5)

This motion will be based upon the Memorandum of Points and Authorities filed herewith, the Declaration of Corey W. Glave filed herewith, attached Exhibits, all pleadings and papers on file with the Court in this action, and upon such other evidence and oral argument as may be presented at the hearing on this motion.


DATED: February 3, 2022          COREY W. GLAVE, ATTORNEY AT LAW

                                 /s/ Corey W. Glave
                          By:_____
                                 Corey W. Glave
                                 Attorneys for Plaintiffs

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

3    **I.    INTRODUCTION/STATEMENT OF FACTS**

4              On November 8, 2021, Plaintiffs filed this action, raising only state law claims, in

5    the Orange County Superior Court. (Docket 1, p. 9-127).  The Complaint alleges causes

6    of action, under state law, for 1) Violation of California Government Code §3500, et

7    Seq.; 2) Violation of the Public Safety Officers Procedural Bill of Rights Act, California

8    Government Code Section 3300 et. Seq.; 3) Violation of Freedom of Speech (under

9    California's State Constitution); 4) Violation of California Labor Code §§1102, 1102,

10   1102.5; 5) Violation of California Penal Code §§832.5-832.8, California Evidence Code

11   §§1043-1046; and 6) Retaliation under California Government Code §12900, et seq.

12   There is no federal claims nor does the Complaint seek any relief or remedy under 42

13   U.S.C. §1983.

14             On November 10, 2021, Plaintiffs served the lawsuit on the City of Santa Ana.

15   (Docket 1, p. 57), thirty days later, on December 10, 2021, Defendant City of Santa Ana

16   filed a motion to quash the service based on hyper-technical arguments. (Docket 1,

17   page 64).  On the day Defendant City's motion to quash was to be heard, without notice

18   to either the Superior Court nor Plaintiffs, Defendants abandoned their motion and

19   failed to appear.  The Superior Court took the matter off-calendar. (Docket No. 1, p.

20   301).  As such, Defendant City of Santa Ana withdrew its challenge to the November

21   10th service, and that service on Defendant City was legally effective.

22             On December 23, 2021, the remaining named defendants, in their official

23   capacities, were served via the Santa Ana City Clerk (and another copy was served on

24   the City of Santa Ana out of an abundance of caution), and Defendants informed

25   Plaintiff's counsel that this service would be accepted for the named defendants in their

26   individual capacities, as well. (Exhibits.1 and 2, attached hereto).

27             Unbeknownst to Plaintiffs, on January 24, 2022, seventy-five (75) days after the

28   City of Santa Ana was served and thirty two (32) days after the individually named

3

1  defendants were served, Defendants removed this action to the United States District

2  Court.

3      Also on January 24, 2022, Defendants sent a meet and confer letter regarding

4  bringing a Rule 12 motion. Note, at this time, Plaintiffs had not been made aware of the

5  matter being removed to federal court. On January 26th, the Court (but not Defendants)

6  began serving Plaintiffs with various notices.  Plaintiff inquired of defense counsel if

7  Defendants would be serving Plaintiffs with their Notice of Removal.  Plaintiffs also

8  informed defense counsel that there was no proper basis for removal and that Plaintiffs

9  would be seeking a rejection of the removal and return of the case to the Orange

10 County Superior Court. (Ex. 3). Late that same day (January 26th), defense counsel

11 provided, via e-mail, a copy of the Notice of Removal, and inquired if Plaintiffs proposed

12 dismissing the 42 USC section 1983 portion of the Third Cause of Action. (Exhibit 4).[1]

13     On January 31, 2022, Defendant Valentin filed his separate Motion to

14 Dismiss/Request for a More Definite Statements (Docket No. 8) and Defendants City of

15 Santa Ana, Santa Ana Police Department, Kristine Ridge, Sonia Carvalho and Jason

16 Motsick filed two motions to Dismiss or Request for More Definitive Statement. (Docket

17 No. 10 and 12).  The hearing is scheduled for February 28, 2022.  As such, there is

18 insufficient time to bring a noticed motion for remand to the Superior Court.

19     On February 1, 2022, Plaintiffs, having now been served with the Notice of

20 Removal and having reviewed Ms. Kang's email, informed defense counsel that

21 Plaintiffs had only brought state law claims and there is no federal claim currently in the

22 Complaint.  Plaintiff explained that Defendants' contentions that Paragraph 145 of the

23 Complaint, which states

24        "While the U.S. Constitution grants citizens protections for free speech

25        under the First Amendment to the U.S. Constitution, which are enforced

26        via 42 USC §1983, the California Constitution also protects this right.

27  _____

28  [1]Later that day, Plaintiffs' counsel received the Notice of Removal via US Mail,
    too.

4

1
2
3
4
5
6

> Article I, Section 2 of the California Constitution states that "[e]very person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. . . ." Article I, Section 3 of the California Constitution states "[T]he people have the right to instruct their representatives, petition government for redress of grievances, and assemble freely to consult for the common good"

7
8
9
10

provides the basis for a federal claim, did not and that Plaintiffs specifically were alleging claims under state law and only under state law. (Ex. 5).  There reference to 42 U.S.C. §1983 was used only as a reference to the type of relief Plaintiffs were seeking under their claims for freedom of speech under the California Constitution.

11
12
13
14
15
16

Plaintiffs further communicated that to the extent defense counsel believed that a federal claim existed, Plaintiffs were willing to stipulate that no federal claim is currently being plead and/or, to the extent there is a federal claim, Plaintiffs were further willing to stipulate to the dismissal of the federal claim, without prejudice. (Id)  Finally, Plaintiff provided notice that if Defendants choose not to enter into said stipulation(s), we would move, ex parte,  for remand based on the above facts. (Id)

17
18
19

The next day, February 2nd, having received no response from defense counsel, Plaintiffs again provided notice that they would be making this ex parte application, and asked for a response by close of business.

20
21

On February 3rd, defense counsel finally responded and suggested that Plaintiffs file an amended complaint, but ignoring the issues of the improper removal. (Ex. 5).

22
23
24
25

To the extent the Court finds that paragraph 145 gives rise to a federal claim (even though no relief or remedy under 42 USC §1983 is sought), Plaintiffs are willing to stipulate and/or dismiss any federal claim, without prejudice.  This matter is only brought seeking to enforce state law claims.

26

27  **II.   ARGUMENT**

28      Removal of an action under 28 U.S.C. § 1441(a) depends solely on the nature of

1   the plaintiffs; complaint, and is properly removed only if "a right or immunity created by

2   the Constitution or laws of the United States [constitutes] an element, and an essential

3   one, of the plaintiff's cause of action." *Gully v. First National Bank in Meridian*, 299 U.S.

4   109, 112 (1936). Removal statutes are strictly construed. See *Libhart v. Santa Monica*

5   *Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). "Federal jurisdiction must be rejected if

6   there is any doubt as to the right of removal in the first instance." *Gaus v. Miles,* 980

7   F.2d 564, 566 (9th Cir.1992). "The burden of establishing federal jurisdiction falls on the

8   party invoking removal." *Harris v. Provident Life and Accident Ins. Co.*, 26 F.3d 930,

9   932 (9th Cir.1994) (quoting Gould v. Mut. Life Ins. Co. of New York, 790 F.2d 769, 771

10  (9th Cir.1986)). The plaintiff is the master of his or her own complaint and is free to

11  ignore the federal cause of action and rest the claim solely on a state cause of action.

12  See The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25, (1913); Jones v. General

13  Tire & Rubber Co., 541 F.2d 660, 664 (7th Cir.1976); La Chemise Lacoste v. Alligator

14  Co., 506 F.2d 339, 346 (3d Cir.1974), cert. denied, 421 U.S. 937 (1975).

15          Defendants have not complied with 28 U.S.C. §1446 for removal.

16

17          A.     Need for Ex Parte Application

18          A plaintiff objecting to the removal may file a motion asking the district court to

19  remand the case to state court. *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 69 (1996). The

20  Court may remand an action for lack of subject matter jurisdiction or for any defect in

21  the removal procedures. 28 U.S.C. §1447(c). A plaintiff may move for remand when

22  removal to federal court was procedurally defective, although procedural defects do not

23  necessarily deprive the court of subject matter jurisdiction. *Id*. A motion to remand the

24  case for procedural defects in the removal must be made within 30 days after the

25  removal notice is filed in federal court. *Id.; Northern Calif. Dist. Council of Laborers v.*

26  *Pittsburg–Des Moines Steel Co.* (9th Cir. 1995) 69 F3d 1034, 1038.

27          In this case, because of the delayed service of the Notice of Removal, and

28  Defendants immediate filing of Motions to Dismiss, Plaintiff could not bring a notice

1   motion to challenge the removal prior to the hearing on Defendants' motions to dismiss.

2   Therefore, Plaintiffs need to bring this matter on an ex parte basis.

3

4        B.     No Federal Court Jurisdiction Exists

5        Removal statutes are construed restrictively, so as to limit removal jurisdiction,

6   and doubts as to removability are resolved in favor of remanding the case to the state

7   court. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-109 (1941); Gaus, 980

8   F.2d at 566. On plaintiff's motion for remand, the defendant seeking removal of the

9   action to federal court has the burden of establishing grounds for federal jurisdiction in

10  the case. *Id*. The defendant also has  the burden of showing that it has complied with

11  the procedural requirements for removal. *California ex rel. Lockyer v. Dynegy, Inc*., 375

12  F.3d 831, 838 (9th Cir. 2004).

13       Pursuant to 42 U.S.C. §1331, federal question jurisdiction exists when a claim

14  arises pursuant to a federal law. In this case, Plaintiffs raise only state law claims; there

15  is no federal question. While there is a single paragraph (out of 202 paragraph) that

16  references federal law, the claim is still couched entirely on state law grounds and the

17  Complaint does not invoke 42 U.S.C. §1983. (See *Noel v. J.P. Morgan Chase Bank*

18  *N.A.* (E.D.N.Y. 2013) 918 F. Supp. 2d 123, 125 (remand proper because retaliation

19  claim based on conduct after filing of an EEOC complaint was couched entirely on state

20  grounds and did not invoke federal law/remedies).

21       Importantly, Plaintiffs informed defense counsel that the Complaint involved only

22  state law claims, and offered to stipulate to this fact and/or stipulate to dismiss any

23  federal claim the Court found to exist.  Defendants chose not to work cooperatively with

24  Plaintiffs as it would result in a remanding.

25       Finally, no diversity jurisdiction exists; all opposing parties are from the State of

26  California.

27

28

1

C.    Removal Was Untimely

2    "The notice of removal of a civil action or proceeding shall be filed within 30 days after

3    the receipt by the defendant, through service or otherwise, of a copy of the initial

4    pleading setting forth the claim for relief upon which such action or proceeding is based,

5    or within 30 days after the service of summons upon the defendant if such initial

6    pleading has then been filed in court and is not required to be served on the defendant,

7    whichever period is shorter." 28 U.S.C. § 1446(b)(1).

8         28 U.S.C. §1446(b) requires that the notice of removal of a civil action or

9    proceeding shall be filed within 30 days after the receipt by the defendant, through

10   service or otherwise, of a copy of the initial pleading setting forth the claim for relief

11   upon which such action or proceeding is based, or within 30 days after the service of

12   summons upon the defendant if such initial pleading has then been filed in court and is

13   not required to be served on the defendant, whichever period is shorter.

14        Once the case was served on defendants, they had thirty (30) days to remove it

15   to federal court.  Defendant City of Santa Ana waited seventy-five (75 days), and the

16   other defendants waited thirty-two (32) days.[2]

17

18        D.    No Unanimous Consent

19        When there is more than one defendant in the action, all defendants who have

20   been "properly ... served in the action" must unanimously agree to join in or consent to

21   the removal. (28 U.S.C. §1446(b); Destfino v. Reiswig, 630 F.3d 952, 957 (9th

22   Cir.2011), (quoting *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n. 1 (9th

23   Cir.1988)); also see *Hewitt v. City of Stanton*, 798 F.2d 1230, 1232 (9th Cir.1986);

24   *United Computer Sys., Inc. v. AT & T Corp.*, 298 F.3d 756, 762 (9th Cir.2002). This is

25   commonly referred to as the unanimity requirement. *Lewis v. City of Fresno* (E.D. Cal.

26   2008) 627 F.Supp.2d 1179, 1182. Failure to comply with the unanimity requirement

27

28
            [2]Defendant Valentin did not seek removal.

1   renders the removal procedurally defective. See *Emrich*, 846 F.2d at 1193 n. 1.

2       Not only did Defendant City of Santa Ana not remove the action within 30 days

3   of service, but Defendant Valentin did remove this action to the federal court at all.

4   Moreover, there is no evidence of consent in the Court's docket, nor has any been

5   provided to Plaintiffs.

6       Federal courts are said to "jealously guard" their jurisdiction. This means they

7   strictly construe the removal statute in favor of remand and against removal.

8

9       E.   If Court Finds Federal Question Exists, It Should Remand State Actions

10      Where federal and state-law claims are joined, the court has the power to retain

11  the federal claims and remand the state-law claim. (See *Emrich v. Touche Ross & Co.*

12  (9th Cir. 1988) 846 F.2d 1190, 1196.) Factors that district court considers when

13  deciding whether to retain jurisdiction over supplemental state claims following

14  dismissal of federal claims from a removed action include judicial economy,

15  convenience, fairness, and comity. (See *Millar v. Bay Area Rapid Transit Dist*. (N.D.

16  Cal. 2002), 236 F. Supp. 2d 1110, 1119.).  In this case, the Complaint clearly is based

17  only on state law causes of action and state laws.  As such, all state law claims should

18  be remanded to the Orange County Superior Court.

19      Similarly, given Plaintiffs' clear position that only state law claims exist, and

20  Plaintiffs' willingness to dismiss any federal claims that were inadvertently included

21  (Plaintiff asserts none were, and reference to the First Amendment was only included to

22  clarify the state law action for freedom of speech under the California Constitution), the

23  court should exercise its power to remand the state claims. (See, e.g., *Glover v.*

24  *Borelli's Pizza, Inc.* (S.D. Cal. 2012) 886 F. Supp. 2d 1200 [remanding to state court

25  after plaintiff eliminated federal claim through amendment])

26

27      F.   Court Has Power to Grant Plaintiffs Fees

28      A plaintiff may seek costs and attorneys' fees in connection with a motion to

1  remand. (§ 1447(c).) (See *Martin v. Franklin Capital Corp*. (2005) 546 U.S. 132, 136.)

2  Normally, Plaintiffs would not request fees or sanctions at the outset of litigation,

3  but in this case, Plaintiffs tried to work cooperatively with defense counsel, but to no

4  avail.  One would think that if Defendants were not simply forum shopping, they would

5  have taken Plaintiffs up on their offer of proper stipulations.

6

7  DATED: February 3, 2022                    COREY W. GLAVE, ATTORNEY AT LAW

8                                                             /s/ Corey W. Glave
                                                      By:_____
9                                                             Corey W. Glave
                                                             Attorneys for Plaintiffs
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ex Parte Application For Order Remanding Case

**DECLARATION OF COREY W. GLAVE**

I, COREY W. GLAVE, declare as follows:

1.      I am an attorney at law duly admitted to practice before all courts of the State of California, and attorney of record for Plaintiffs Santa Ana Police Officers Association and Gerry Serrano.  If called upon to testify as to the matters set forth herein, I could and would competently testify thereto.

2.      On or about November 8, 2021, Plaintiffs filed this action, raising only state law claims, in the Orange County Superior Court. (Docket 1, p. 9-127).  The Complaint alleges causes of action, under state law, for 1) Violation of California Government Code §3500, et Seq.; 2) Violation of the Public Safety Officers Procedural Bill of Rights Act, California Government Code Section 3300 et. Seq.; 3) Violation of Freedom of Speech (under California's State Constitution); 4) Violation of California Labor Code §§1102, 1102, 1102.5; 5) Violation of California Penal Code §§832.5-832.8, California Evidence Code §§1043-1046; and 6) Retaliation under California Government Code §12900, et seq.  There is no federal claims nor does the Complaint seek any relief or remedy under 42 U.S.C. §1983.

3.      On November 10, 2021, Plaintiffs served the lawsuit on the City of Santa Ana.  (Docket 1, p. 57), thirty days later, on December 10, 2021, Defendant City of Santa Ana filed a motion to quash the service based on hyper-technical arguments. (Docket 1, page 64).  On the day Defendant City's motion to quash was to be heard, without notice to either the Superior Court nor Plaintiffs, Defendants abandoned their motion and failed to appear.  The Superior Court took the matter off-calendar. (Docket No. 1, p. 301).  As such, Defendant City of Santa Ana withdrew its challenge to the November 10th service, and that service on Defendant City was legally effective.

4.      On December 23, 2021, the remaining named defendants, in their official capacities, were served via the Santa Ana City Clerk (and another copy was served on the City of Santa Ana out of an abundance of caution), and Defendants informed Plaintiff's counsel that this service would be accepted for the named defendants in their

11

1  individual capacities, as well. (Exhibits.1 and 2, attached hereto).

2      5.    Unbeknownst to Plaintiffs, on January 24, 2022, seventy-five (75) days

3  after the City of Santa Ana was served and thirty two (32) days after the individually

4  named defendants were served, Defendants removed this action to the United States

5  District Court.

6      6.    Also on January 24, 2022, Defendants sent a meet and confer letter

7  regarding bringing a Rule 12 motion. Note, at this time, Plaintiffs had not been made

8  aware of the matter being removed to federal court.

9      7.    On January 26th, the Court (but not Defendants) began serving Plaintiffs

10  with various notices.  Plaintiff inquired of defense counsel if Defendants would be

11  serving Plaintiffs with their Notice of Removal.  Plaintiffs also informed defense counsel

12  that there was no proper basis for removal and that Plaintiffs would be seeking a

13  rejection of the removal and return of the case to the Orange County Superior Court.

14  (Ex. 3). Late that same day (January 26th), defense counsel provided, via e-mail, a

15  copy of the Notice of Removal, and inquired if Plaintiffs proposed dismissing the 42

16  USC section 1983 portion of the Third Cause of Action. (Exhibit 4).[3]

17      8.    On January 31, 2022, Defendant Valentin filed his separate Motion to

18  Dismiss/Request for a More Definite Statements (Docket No. 8) and Defendants City of

19  Santa Ana, Santa Ana Police Department, Kristine Ridge, Sonia Carvalho and Jason

20  Motsick filed two motions to Dismiss or Request for More Definitive Statement. (Docket

21  No. 10 and 12).  The hearing is scheduled for February 28, 2022.  As such, there is

22  insufficient time to bring a noticed motion for remand to the Superior Court.

23      9.    On February 1, 2022, Plaintiffs, having now been served with the Notice

24  of Removal and having reviewed Ms. Kang's email, informed defense counsel that

25  Plaintiffs had only brought state law claims and there is no federal claim currently in the

26  Complaint.  Plaintiff explained that Defendants' contentions that Paragraph 145 of the

27  _____

28  [3]Later that day, Plaintiffs' counsel received the Notice of Removal via US Mail, too.

1   Complaint, which states

2   "While the U.S. Constitution grants citizens protections for free speech

3   under the First Amendment to the U.S. Constitution, which are enforced

4   via 42 USC §1983, the California Constitution also protects this right.

5   Article I, Section 2 of the California Constitution states that "[e]very person

6   may freely speak, write and publish his or her sentiments on all subjects,

7   being responsible for the abuse of this right. . . ." Article I, Section 3 of the

8   California Constitution states "[T]he people have the right to instruct their

9   representatives, petition government for redress of grievances, and

10   assemble freely to consult for the common good"

11   provides the basis for a federal claim, did not and that Plaintiffs specifically were

12   alleging claims under state law and only under state law. (Ex. 5). There reference to 42

13   U.S.C. §1983 was used only as a reference to the type of relief Plaintiffs were seeking

14   under their claims for freedom of speech under the California Constitution.

15         10.     Plaintiffs further communicated that to the extent defense counsel

16   believed that a federal claim existed, Plaintiffs were willing to stipulate that no federal

17   claim is currently being plead and/or, to the extent there is a federal claim, Plaintiffs

18   were further willing to stipulate to the dismissal of the federal claim, without prejudice.

19   (Id). Finally, Plaintiff provided notice that if Defendants choose not to enter into said

20   stipulation(s), we would move, ex parte, for remand based on the above facts. (Id).

21         11.     The next day, February 2nd, having received no response from defense

22   counsel, Plaintiffs again provided notice that they would be making this ex parte

23   application, and asked for a response by close of business. (Exhibit 5)

24         12.     On February 3rd, defense counsel finally responded and suggested that

25   Plaintiffs file an amended complaint, but ignoring the issues of the improper removal.

26   (Ex. 5). The communication did not address Plaintiffs' other communications nor did it

27   indicate if the ex parte application would be opposed.

28         13.     To the extent the Court finds that paragraph 145 gives rise to a federal

13

1   claim (even though no relief or remedy under 42 USC §1983 is sought), Plaintiffs are

2   willing to stipulate and/or dismiss any federal claim, without prejudice.  This matter is

3   only brought seeking to enforce state law claims.

4         I declare under penalty of perjury under the laws of the State of California that

5   the foregoing is true and correct, and that this declaration is executed on February 3,

6   2022, at Redondo Beach, California.

7                                            /s/ Corey Glave

8                                            _____

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ex Parte Application For Order Remanding Case

1      PROOF OF SERVICE

2   STATE OF CALIFORNIA, COUNTY OF <u>LOS ANGELES</u>:

3          I am employed in the County of Los Angeles, State of California.  I am over the
    age of 18 and not a party to the within action; my address is 632 S. Gertruda Ave,
4   Redondo Beach, CA 90277

5          On February 3, 2022, I served the foregoing document described as

6                     Ex Parte Application

7   on the parties in this action by electronic service to:

8   LEWIS BRISBOIS BISGAARD & SMITH LLP          Attorneys for Defendant
    ANDREA L. STEFFAN, SB# 332596                City of Santa Ana, Santa Ana
9   Andrea.Steffan@lewisbrisbois.com             Police Department, Kristine
    633 West 5th Street, Suite 4000              Ridge, Sonia Carvalho, Jason
10  Los Angeles, California 90071                Motsick
    Jeffrey.Ranen@lewisbrisbois.com
11  Sawyer.Stephens@lewisbrisbois.com

12
    EVERETT DOREY LLP                            Attorney for Defendant David
13  Seymour B. Everett, III, SBN 223441          Valentin
    severett@everettdorey.com
14  Samantha E. Dorey, SBN 281006
    sdorey@everettdorey.com
15  Christopher D. Lee, SBN 280738
    clee@everettdorey.com
16  James C. Truxaw, SBN 316311
    jtruxaw@everettdorey.com
17  18300 Von Karman Avenue,
    Irvine, CA 92612

18
           I filed the documents with the U.S. District Court via the CM/ECF system.  Per
19  ECF rules, all individuals registered with the Court to receive notice of electronically
    filed documents will be served via electronic mail to the e-mail address they have on file
20  with the Court.  Any firm which has not consented to electronic service will be provided
    copies via U.S. Mail to the address specified by the Court in the Notice of Electronic
21  Filing generated upon completion of the document filing.

22         Executed on February 3, 2022, at Redondo Beach, California.

23  _X_    STATE     I declare under penalty of perjury under the laws of the State of
                     California that the above is true and correct.
24

25                              /s/ Corey Glave

26                   _____
                                Corey W. Glave
27

28

                                    15
    _____
                   Ex Parte Application For Order Remanding Case

| Subject: | **RE: [EXT] Re: Santa Ana Police Officers v City of Santa Ana, et al. - Our Billing Ref No. 51601-02 - See attached Specially Appearing Notice of Motion and Motion to Quash Service of Summons & Supporting Docs. Attached** |
|---|---|
| Date: | 1/7/2022 11:17:44 AM Pacific Standard Time |
| From: | Soojin.Kang@lewisbrisbois.com |
| To: | poaattorney@aol.com, Jeffrey.Ranen@lewisbrisbois.com |
| Cc: | Andrea.Steffan@lewisbrisbois.com |

Counsel, good morning,

Thank you for letting us know.  When the City of Santa Ana was served with a revised summons, we had requested to take the motion to quash off-calendar and I thought your office was so advised.  I apologize that did not occur.

As for the December 23rd delivery of the revised summons and complaint in this lawsuit, Santa Ana Police Officers Association and Gerry Serrano v. City of Santa Ana et al., Case Number 30-2021-01230129-CU-OE-CJC, to the Clerk of the Council, please be advised that the City of Santa Ana acknowledges receipt and accepts service on behalf of Chief Valentin, Kristine Ridge, Sonia Carvalho, and Jason Motsick.

Regards,

**Soojin Kang**
**Partner**
Soojin.Kang@lewisbrisbois.com

**T: 213.358.6139  F: 213.250.7900**

633 W. 5th Street, Suite 4000, Los Angeles, CA 90071  |  LewisBrisbois.com

**Representing clients from coast to coast. View our locations nationwide.**

This e-mail may contain or attach privileged, confidential or protected information intended only for the use of the intended recipient. If you are not the intended recipient, any review or use of it is strictly prohibited. If you have received this e-mail in error, you are required to notify the sender, then delete this email and any attachment from your computer and any of your electronic devices where the message is stored.

**From:** Corey Glave <poaattorney@aol.com>
**Sent:** Friday, January 7, 2022 10:32 AM
**To:** Ranen, Jeffrey <Jeffrey.Ranen@lewisbrisbois.com>
**Cc:** Kang, Soojin <Soojin.Kang@lewisbrisbois.com>; Steffan, Andrea <Andrea.Steffan@lewisbrisbois.com>
**Subject:** [EXT] Re: Santa Ana Police Officers v City of Santa Ana, et al. - Our Billing Ref No. 51601-02 - See attached Specially Appearing Notice of Motion and Motion to Quash Service of Summons & Supporting Docs. Attached

Good Morning Counsel,


    This morning we appeared, via zoom, in Department 20 of the Orange County Superior Court on Defendant City of Santa Ana's Motion to Quash Service of Summons.  There was no appearance by your office or any Defendant.  The Court took the matter off calendar, and indicated that the Case Management Conference scheduled for May 9, 2022, remained on calendar.


    The Court did not order us to give notice; we are doing so as a courtesy.


Corey W. Glave

Attorney at Law

632 S. Gertruda Ave.

Redondo Beach, CA 90277

(323) 547-0472

This electronic mail transmission, including any attachments, may contain confidential information which is legally privileged.  This information is intended only for the use of the individual or entity named above and may contain information that may be protected by the attorney-client privilege, work-product doctrine or other privileges, and may be restricted from disclosure pursuant to applicable state and/or federal laws.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or taking of any action in reliance on the information is strictly prohibited.  If you have received this e-mail information in error, please notify the sender immediately and permanently delete all copies of this e-mail and any attached document(s).  Failure to do so may be in violation of the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521.


Corey Glave, Attorney at Law, does not accept or consent to the service of process, motions, pleadings, discovery, documents or any other items by electronic format unless directed by a court of law.  Correspondences via electronic form does not indicate an agreement or consent to acceptance of service in such format.

Thank you and have a great day.

In a message dated 12/10/2021 4:56:34 PM Pacific Standard Time, Lytonia.Sanders@lewisbrisbois.com writes:


Dear Counsel:

Attached please find the Specially Appearing Notice of Motion and Motion to Quash Service of Summons and Supporting Documents which we are filing today with Orange County Superior Court for your review/records. Please mark your calendar accordingly.  If you have any questions, please do not hesitate to contact this office.

Sincerely,

*Lytonia Sanders*

Litigation Assistant

Assistant to Sara Poggi, Partner,

Andrea Steffan & Heather Horn

LEWIS BRISBOIS BISGAARD & SMITH LLP

633 West 5th Street, Suite 4000

Los Angeles, California 90071

Direct Dial: (213) 580-7906

Lytonia.Sanders@lewisbrisbois.com

**Subject:** **RE: [EXT] Re: Santa Ana Police Officers v City of Santa Ana, et al. - Our Billing Ref No. 51601-02 - See attached Specially Appearing Notice of Motion and Motion to Quash Service of Summons & Supporting Docs. Attached**

**Date:** 1/11/2022 5:34:04 PM Pacific Standard Time

**From:** Soojin.Kang@lewisbrisbois.com

**To:** poaattorney@aol.com, Jeffrey.Ranen@lewisbrisbois.com

**Cc:** Andrea.Steffan@lewisbrisbois.com, CoreyGlave@gmail.com, Sawyer.Stephens@lewisbrisbois.com

Counsel,

Yes. The City of Santa Ana has accepted service of process on the individual defendants so you do not need to send a process service to their personal residences.

Chief Valentin is represented by:

Seymour B. Everett, III

EVERETT DOREY LLP

Partner

18300 Von Karman Avenue, Suite 900

Irvine, CA 92612

F: 949.377.3110

D: 949.771.9244

M: 714.679.1621

E: severett@everettdorey.com

Additional representation information to follow.

---

**From:** Corey Glave <poaattorney@aol.com>
**Sent:** Tuesday, January 11, 2022 2:21 PM
**To:** poaattorney@aol.com; Kang, Soojin <Soojin.Kang@lewisbrisbois.com>; Ranen, Jeffrey <Jeffrey.Ranen@lewisbrisbois.com>
**Cc:** Steffan, Andrea <Andrea.Steffan@lewisbrisbois.com>
**Subject:** Re: [EXT] Re: Santa Ana Police Officers v City of Santa Ana, et al. - Our Billing Ref No. 51601-02 - See attached Specially Appearing Notice of Motion and Motion to Quash Service of Summons & Supporting Docs. Attached

Good Afternoon,

We were just wondering if there will a response to the e-mail, below?

If the City is accepting the service of process on the individuals (so we do not have to send a process server to their personal residences), please let us know as we have to submit proof of services for the service that has already been accomplished.

Corey W. Glave

Attorney at Law

632 S. Gertruda Ave.

Redondo Beach, CA 90277

(323) 547-0472

This electronic mail transmission, including any attachments, may contain confidential information which is legally privileged. This information is intended only for the use of the individual or entity named above and may contain information that may be protected by the attorney-client privilege, work-product doctrine or other privileges, and may be restricted from disclosure pursuant to applicable state and/or federal laws. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or taking of any action in reliance on the information is strictly prohibited. If you have received this e-mail information in error, please notify the sender immediately and permanently delete all copies of this e-mail and any attached document(s). Failure to do so may be in violation of the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521.

Corey Glave, Attorney at Law, does not accept or consent to the service of process, motions, pleadings, discovery, documents or any other items by electronic format unless directed by a court of law. Correspondences via electronic form does not indicate an agreement or consent to acceptance of service in such format.

Thank you and have a great day.

In a message dated 1/7/2022 11:27:50 AM Pacific Standard Time, poaattorney@aol.com writes:

> Counsel,

Thank you for your e-mail.  Will your firm now be officially representing the City of Santa Ana in this matter (as the original appearances were referenced as "special appearances."  Will your firm be representing all named defendants in this action (in both their official and individual capacities)?

Can you please clarify your statement that the City of Santa Ana "acknowledges receipt and accepts service on behalf of Chief Valentin, Kristine Ridge, Sonia Carvalho, and Jason Motsick."  After the service was completed, the City Attorney's office notified that City Clerk that they could only accept service for the individuals in their official capacity, and the Clerk's office contacted us to let us know of the City Attorney's position.  Is your firm now indicating that the the City has the authority to and has accepted service for the individuals in their individual capacity as well (based on the service on the City Clerk's office on December 23, 2021)?

As far as notice of taking the motion off calendar, please note that neither the Court nor this office were notified, thus the Court called the matter and we appeared.

Finally, for electronic service of process, please use this address as well as CoreyGlave@gmail.com, to insure we receive electronic service.

Thank you.

Corey W. Glave
Attorney at Law
632 S. Gertruda Ave.
Redondo Beach, CA 90277
(323) 547-0472


This electronic mail transmission, including any attachments, may contain confidential information which is legally privileged.  This information is intended only for the use of the individual or entity named above and may contain information that may be protected by the attorney-client privilege, work-product doctrine or other privileges, and may be restricted from disclosure pursuant to applicable state and/or federal laws.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or taking of any action in reliance on the information is strictly prohibited.  If you have received this e-mail information in error, please notify the sender immediately and permanently delete all copies of this e-mail and any attached document(s).  Failure to do so may be in violation of the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521.

Corey Glave, Attorney at Law, does not accept or consent to the service of process, motions, pleadings, discovery, documents or any other items by electronic format unless directed by a court of law.  Correspondences via electronic form does not indicate an agreement or consent to acceptance of service in such format.

Thank you and have a great day.
In a message dated 1/7/2022 11:17:44 AM Pacific Standard Time, Soojin.Kang@lewisbrisbois.com writes:

Counsel, good morning,

Thank you for letting us know.  When the City of Santa Ana was served with a revised summons, we had requested to take the motion to quash off-calendar and I thought your office was so advised.  I apologize that did not occur.

As for the December 23rd delivery of the revised summons and complaint in this lawsuit, Santa Ana Police Officers Association and Gerry Serrano v. City of Santa Ana et al., Case Number 30-2021-01230129-CU-OE-CJC, to the Clerk of the Council, please be advised that the City of Santa Ana acknowledges receipt and accepts service on behalf of Chief Valentin, Kristine Ridge, Sonia Carvalho, and Jason Motsick.

Regards,

**Soojin Kang**
**Partner**
Soojin.Kang@lewisbrisbois.com

**T: 213.358.6139  F: 213.250.7900**

633 W. 5th Street, Suite 4000, Los Angeles, CA 90071  |  **LewisBrisbois.com**

**Representing clients from coast to coast. View our locations nationwide.**

This e-mail may contain or attach privileged, confidential or protected information intended only for the use of the intended recipient. If you are not the intended recipient, any review or use of it is strictly prohibited. If you have received this e-mail in error, you are required to notify the sender, then delete this email and any attachment from your computer and any of your electronic devices where the message is stored.

---

**From:** Corey Glave <poaattorney@aol.com>
**Sent:** Friday, January 7, 2022 10:32 AM
**To:** Ranen, Jeffrey <Jeffrey.Ranen@lewisbrisbois.com>
**Cc:** Kang, Soojin <Soojin.Kang@lewisbrisbois.com>; Steffan, Andrea <Andrea.Steffan@lewisbrisbois.com>
**Subject:** [EXT] Re: Santa Ana Police Officers v City of Santa Ana, et al. - Our Billing Ref No. 51601-02 - See attached Specially Appearing Notice of Motion and Motion to Quash Service of Summons & Supporting Docs. Attached

Good Morning Counsel,

   This morning we appeared, via zoom, in Department 20 of the Orange County Superior Court on Defendant City of Santa Ana's Motion to Quash Service of Summons.  There was no appearance by your office or any Defendant.  The Court took the matter off calendar, and indicated that the Case Management Conference scheduled for May 9, 2022, remained on calendar.

   The Court did not order us to give notice; we are doing so as a courtesy.

Corey W. Glave

Attorney at Law

632 S. Gertruda Ave.

Redondo Beach, CA 90277

(323) 547-0472

This electronic mail transmission, including any attachments, may contain confidential information which is legally privileged. This information is intended only for the use of the individual or entity named above and may contain information that may be protected by the attorney-client privilege, work-product doctrine or other privileges, and may be restricted from disclosure pursuant to applicable state and/or federal laws. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or taking of any action in reliance on the information is strictly prohibited. If you have received this e-mail information in error, please notify the sender immediately and permanently delete all copies of this e-mail and any attached document(s). Failure to do so may be in violation of the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521.

Corey Glave, Attorney at Law, does not accept or consent to the service of process, motions, pleadings, discovery, documents or any other items by electronic format unless directed by a court of law. Correspondences via electronic form does not indicate an agreement or consent to acceptance of service in such format.

Thank you and have a great day.

In a message dated 12/10/2021 4:56:34 PM Pacific Standard Time, Lytonia.Sanders@lewisbrisbois.com writes:

Dear Counsel:

Attached please find the Specially Appearing Notice of Motion and Motion to Quash Service of Summons and Supporting Documents which we are filing today with Orange County Superior Court for your review/records. Please mark your calendar accordingly. If you have any questions, please do not hesitate to contact this office.

Sincerely,

*Lytonia Sanders*

Litigation Assistant

Assistant to Sara Poggi, Partner,

Andrea Steffan & Heather Horn

LEWIS BRISBOIS BISGAARD & SMITH LLP

633 West 5th Street, Suite 4000

Los Angeles, California 90071

| | |
|---|---|
| **Subject:** | **RE: [EXT] Re: SAPOA and Serrano v. City of Santa Ana et al.** |
| Date: | 1/26/2022 5:29:22 PM Pacific Standard Time |
| From: | Soojin.Kang@lewisbrisbois.com |
| To: | poaattorney@aol.com, CoreyGlave@gmail.com |
| Cc: | Jeffrey.Ranen@lewisbrisbois.com, Andrea.Steffan@lewisbrisbois.com |

Counsel,

I believe my secretary served the Notice of Removal on Plaintiffs by mail.  Here is an electronic copy.  The basis of removal was federal question jurisdiction based on the 42 USC section 1983 claim in the third cause of action.  If you are proposing to dismiss the third cause of action or the 42 USC section 1983 portion of the third cause of action, please advise.

---

**From:** Corey Glave <poaattorney@aol.com>
**Sent:** Wednesday, January 26, 2022 4:24 PM
**To:** Kang, Soojin <Soojin.Kang@lewisbrisbois.com>; CoreyGlave@gmail.com
**Cc:** Ranen, Jeffrey <Jeffrey.Ranen@lewisbrisbois.com>; Steffan, Andrea <Andrea.Steffan@lewisbrisbois.com>
**Subject:** [EXT] Re: SAPOA and Serrano v. City of Santa Ana et al.

Good Afternoon Counsel,

   We are in receipt of your meet and confer letter, as well as several notices from the District Court regarding assignment, ADR and Stipulation to a Magistrate Judge, but we have not been served with and/or received any Notice of Removal or related pleadings.  Will your office be serving said documents on Plaintiffs?

   Also, without seeing your Notice of Removal, we only raised state law claims in our complaint and do not know of any proper basis for removal.  Once served with the removal documents, we will be asking the District Court to return the case to the Orange County Superior Court.

Corey W. Glave

Attorney at Law

632 S. Gertruda Ave.

Redondo Beach, CA 90277

(323) 547-0472

This electronic mail transmission, including any attachments, may contain confidential information which is legally privileged.  This information is intended only for the use of the individual or entity named above and may contain information that may be protected by the attorney-client privilege, work-product doctrine or other privileges, and may be restricted from disclosure pursuant to applicable state and/or federal laws.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or taking of any action in reliance on the information is strictly prohibited.  If you have received this e-mail information in error, please notify the sender immediately and permanently delete all copies of this e-mail and any attached document(s).  Failure to do so may be in violation of the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521.

Corey Glave, Attorney at Law, does not accept or consent to the service of process, motions, pleadings, discovery, documents or any other items by electronic format unless directed by a court of law.  Correspondences via electronic form does not indicate an agreement or consent to acceptance of service in such format.

Thank you and have a great day.

In a message dated 1/24/2022 5:00:57 PM Pacific Standard Time, Soojin.Kang@lewisbrisbois.com writes:

Dear counsel,

Please see the attached meet, confer letter, and let us know if you have any questions or would like to discuss.  Thank you.

Soojin

**Soojin Kang**
**Partner**
Soojin.Kang@lewisbrisbois.com

**T: 213.358.6139  F: 213.250.7900**

633 W. 5th Street, Suite 4000, Los Angeles, CA 90071  |  **LewisBrisbois.com**

**Representing clients from coast to coast. View our locations nationwide.**

This e-mail may contain or attach privileged, confidential or protected information intended only for the use of the intended recipient. If you are not the intended recipient, any review or use of it is strictly prohibited. If you have received this e-mail in error, you are required to notify the sender, then delete this email and any attachment from your computer and any of your electronic devices where the message is stored.

| | |
|---|---|
| Subject: | **RE: [EXT] Re: SAPOA and Serrano v. City of Santa Ana et al.** |
| Date: | 1/26/2022 5:29:22 PM Pacific Standard Time |
| From: | Soojin.Kang@lewisbrisbois.com |
| To: | poaattorney@aol.com, CoreyGlave@gmail.com |
| Cc: | Jeffrey.Ranen@lewisbrisbois.com, Andrea.Steffan@lewisbrisbois.com |

Counsel,


I believe my secretary served the Notice of Removal on Plaintiffs by mail. Here is an electronic copy. The basis of removal was federal question jurisdiction based on the 42 USC section 1983 claim in the third cause of action. If you are proposing to dismiss the third cause of action or the 42 USC section 1983 portion of the third cause of action, please advise.

---

**From:** Corey Glave <poaattorney@aol.com>
**Sent:** Wednesday, January 26, 2022 4:24 PM
**To:** Kang, Soojin <Soojin.Kang@lewisbrisbois.com>; CoreyGlave@gmail.com
**Cc:** Ranen, Jeffrey <Jeffrey.Ranen@lewisbrisbois.com>; Steffan, Andrea <Andrea.Steffan@lewisbrisbois.com>
**Subject:** [EXT] Re: SAPOA and Serrano v. City of Santa Ana et al.


Good Afternoon Counsel,


  We are in receipt of your meet and confer letter, as well as several notices from the District Court regarding assignment, ADR and Stipulation to a Magistrate Judge, but we have not been served with and/or received any Notice of Removal or related pleadings. Will your office be serving said documents on Plaintiffs?


  Also, without seeing your Notice of Removal, we only raised state law claims in our complaint and do not know of any proper basis for removal. Once served with the removal documents, we will be asking the District Court to return the case to the Orange County Superior Court.


Corey W. Glave

Attorney at Law

632 S. Gertruda Ave.

Redondo Beach, CA 90277

(323) 547-0472

This electronic mail transmission, including any attachments, may contain confidential information which is legally privileged. This information is intended only for the use of the individual or entity named above and may contain information that may be protected by the attorney-client privilege, work-product doctrine or other privileges, and may be restricted from disclosure pursuant to applicable state and/or federal laws. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or taking of any action in reliance on the information is strictly prohibited. If you have received this e-mail information in error, please notify the sender immediately and permanently delete all copies of this e-mail and any attached document(s). Failure to do so may be in violation of the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521.


Corey Glave, Attorney at Law, does not accept or consent to the service of process, motions, pleadings, discovery, documents or any other items by electronic format unless directed by a court of law. Correspondences via electronic form does not indicate an agreement or consent to acceptance of service in such format.


Thank you and have a great day.

In a message dated 1/24/2022 5:00:57 PM Pacific Standard Time, Soojin.Kang@lewisbrisbois.com writes:


Dear counsel,


Please see the attached meet, confer letter, and let us know if you have any questions or would like to discuss. Thank you.


Soojin


**Soojin Kang**
**Partner**
Soojin.Kang@lewisbrisbois.com

**T: 213.358.6139  F: 213.250.7900**

633 W. 5th Street, Suite 4000, Los Angeles, CA 90071  |  **LewisBrisbois.com**

**Representing clients from coast to coast. View our locations nationwide.**

This e-mail may contain or attach privileged, confidential or protected information intended only for the use of the intended recipient. If you are not the intended recipient, any review or use of it is strictly prohibited. If you have received this e-mail in error, you are required to notify the sender, then delete this email and any attachment from your computer and any of your electronic devices where the message is stored.

| | |
|---|---|
| **Subject:** | **RE: [EXT] Re: SAPOA and Serrano v. City of Santa Ana et al.** |
| **Date:** | 2/3/2022 4:27:57 PM Pacific Standard Time |
| **From:** | Jeffrey.Ranen@lewisbrisbois.com |
| **To:** | poaattorney@aol.com, Soojin.Kang@lewisbrisbois.com, CoreyGlave@gmail.com |
| **Cc:** | Sawyer.Stephens@lewisbrisbois.com |

Corey,

If you are not asserting a federal claim, we think it makes sense for Plaintiffs to just file an amended Complaint which accurately reflects the state claims which your clients are asserting.

**Jeff Ranen**

Partner, Vice Chair of the Employment Law Practice

**Lewis Brisbois Bisgaard & Smith LLP**
213.580.3921 | Jeffrey.Ranen@LewisBrisbois.com

---

**From:** Corey Glave <poaattorney@aol.com>
**Sent:** Wednesday, February 2, 2022 2:05 PM
**To:** Kang, Soojin <Soojin.Kang@lewisbrisbois.com>; CoreyGlave@gmail.com
**Cc:** Ranen, Jeffrey <Jeffrey.Ranen@lewisbrisbois.com>; Steffan, Andrea <Andrea.Steffan@lewisbrisbois.com>
**Subject:** Re: [EXT] Re: SAPOA and Serrano v. City of Santa Ana et al.

Good Afternoon,

    As we have not received a response to our 2/1/2022 email, below, if we continue without a response by the close of business today, we will proceed with the understanding that Defendants will not be stipulating as proposed and will be filing a request, ex parte, for relief from the court.

Corey W. Glave

Attorney at Law

632 S. Gertruda Ave.

Redondo Beach, CA 90277

(323) 547-0472

This electronic mail transmission, including any attachments, may contain confidential information which is legally privileged.  This information is intended only for the use of the individual or entity named above and may contain information that may be protected by the attorney-client privilege, work-product doctrine or other privileges, and may be restricted from disclosure pursuant to applicable state and/or federal laws.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or taking of any action in reliance on the information is strictly prohibited.  If you have received this e-mail information in error, please notify the sender immediately and permanently delete all copies of this e-mail and any attached document(s).  Failure to do so may be in violation of the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521.

Corey Glave, Attorney at Law, does not accept or consent to the service of process, motions, pleadings, discovery, documents or any other items by electronic format unless directed by a court of law.  Correspondences via electronic form does not indicate an agreement or consent to acceptance of service in such format.

Thank you and have a great day.

In a message dated 2/1/2022 10:04:18 AM Pacific Standard Time, poaattorney@aol.com writes:

Counsel,

We have now been served with the Notice of Removal and have reviewed Ms. Kang's email.  Plaintiffs have only brought state law claims and there is no federal claim currently in the Complaint.

As we understand the Defendants' contentions, Defendants argue that Paragraph 145 of the Complaint, which states "While the U.S. Constitution grants citizens protections for free speech under the First Amendment to the U.S. Constitution, which are enforced via 42 USC §1983, the California Constitution also protects this right. Article I, Section 2 of the California Constitution states that "[e]very person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. . . ." Article I, Section 3 of the California Constitution states "[T]he people have the right to instruct their representatives, petition government for redress of grievances, and assemble freely to consult for the common good" provides the basis for a federal claim; it does not.  We specifically are alleging claims under state law.

To the extent you believe that a federal claim exists, we are willing to stipulate that no federal claim is currently being plead.  To the extent there is a federal claim, we are further willing to stipulate to the dismissal of the federal claim, without prejudice.

If Defendants choose not to enter into said stipulation(s), we will move ex parte for remand based on the above facts.

We also note, that due to Defendants' withdrawing its motion to quash, service is presumed correct and binding on the City of Santa Ana on the original date of service.

Corey W. Glave
Attorney at Law
632 S. Gertruda Ave.
Redondo Beach, CA 90277
(323) 547-0472

This electronic mail transmission, including any attachments, may contain confidential information which is legally privileged.  This information is intended only for the use of the individual or entity named above and may contain information that may be protected by the attorney-client privilege, work-product doctrine or other privileges, and may be restricted from disclosure pursuant to applicable state and/or federal laws.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or taking of any action in reliance on the information is strictly

prohibited.  If you have received this e-mail information in error, please notify the sender immediately and permanently delete all copies of this e-mail and any attached document(s).  Failure to do so may be in violation of the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521.

Corey Glave, Attorney at Law, does not accept or consent to the service of process, motions, pleadings, discovery, documents or any other items by electronic format unless directed by a court of law.  Correspondences via electronic form does not indicate an agreement or consent to acceptance of service in such format.

Thank you and have a great day.
In a message dated 1/26/2022 5:29:22 PM Pacific Standard Time, Soojin.Kang@lewisbrisbois.com writes:

> Counsel,
>
> I believe my secretary served the Notice of Removal on Plaintiffs by mail.  Here is an electronic copy.  The basis of removal was federal question jurisdiction based on the 42 USC section 1983 claim in the third cause of action.  If you are proposing to dismiss the third cause of action or the 42 USC section 1983 portion of the third cause of action, please advise.
>
> ---
>
> **From:** Corey Glave <poaattorney@aol.com>
> **Sent:** Wednesday, January 26, 2022 4:24 PM
> **To:** Kang, Soojin <Soojin.Kang@lewisbrisbois.com>; CoreyGlave@gmail.com
> **Cc:** Ranen, Jeffrey <Jeffrey.Ranen@lewisbrisbois.com>; Steffan, Andrea <Andrea.Steffan@lewisbrisbois.com>
> **Subject:** [EXT] Re: SAPOA and Serrano v. City of Santa Ana et al.
>
> Good Afternoon Counsel,
>
> We are in receipt of your meet and confer letter, as well as several notices from the District Court regarding assignment, ADR and Stipulation to a Magistrate Judge, but we have not been served with and/or received any Notice of Removal or related pleadings.  Will your office be serving said documents on Plaintiffs?
>
> Also, without seeing your Notice of Removal, we only raised state law claims in our complaint and do not know of any proper basis for removal.  Once served with the removal documents, we will be asking the District Court to return the case to the Orange County Superior Court.
>
> Corey W. Glave
>
> Attorney at Law
>
> 632 S. Gertruda Ave.
>
> Redondo Beach, CA 90277
>
> (323) 547-0472

This electronic mail transmission, including any attachments, may contain confidential information which is legally privileged. This information is intended only for the use of the individual or entity named above and may contain information that may be protected by the attorney-client privilege, work-product doctrine or other privileges, and may be restricted from disclosure pursuant to applicable state and/or federal laws. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or taking of any action in reliance on the information is strictly prohibited. If you have received this e-mail information in error, please notify the sender immediately and permanently delete all copies of this e-mail and any attached document(s). Failure to do so may be in violation of the Electronic Communications Privacy Act, 18 U.S.C. 2510-2521.

Corey Glave, Attorney at Law, does not accept or consent to the service of process, motions, pleadings, discovery, documents or any other items by electronic format unless directed by a court of law. Correspondences via electronic form does not indicate an agreement or consent to acceptance of service in such format.

Thank you and have a great day.

In a message dated 1/24/2022 5:00:57 PM Pacific Standard Time, Soojin.Kang@lewisbrisbois.com writes:

Dear counsel,

Please see the attached meet, confer letter, and let us know if you have any questions or would like to discuss. Thank you.

Soojin

**Soojin Kang**
**Partner**
Soojin.Kang@lewisbrisbois.com

**T: 213.358.6139  F: 213.250.7900**

633 W. 5th Street, Suite 4000, Los Angeles, CA 90071  |  **LewisBrisbois.com**

**Representing clients from coast to coast. View our locations nationwide.**

This e-mail may contain or attach privileged, confidential or protected information intended only for the use of the intended recipient. If you are not the intended recipient, any review or use of it is strictly prohibited. If you have received this e-mail in error, you are required to notify the sender, then delete this email and any attachment from your computer and any of your electronic devices where the message is stored.

COREY W. GLAVE (State Bar No. 164746)
Attorney at Law
632 S. Gertruda Ave
Redondo Beach, CA 90277
Phone: (323) 547-0472
POAattorney@aol.com

Attorneys for Plaintiffs
Santa Ana Police Officers Assn
and Gerry Serrano

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ORANGE-CENTRAL

Assigned for All Purposes  Judge Lon F. Hurwitz

| | |
|---|---|
| SANTA ANA POLICE OFFICERS ASSOCIATION; GERRY SERRANO | Case 30-2021-01230129-CU-OE-CJC |
| Plaintiffs, | CIVIL COMPLAINT |
| vs. | 1. VIOLATION OF GOVERNMENT CODE §3500, ET SEQ. |
| CITY OF SANTA ANA, a Municipal Corporation; SANTA ANA POLICE DEPARTMENT, a public safety department; DAVID VALENTIN, Chief of Police; KRISTIN RIDGE, City Manager; SONIA CARVALHO, City Attorney; JASON MOTSICK, Director of Human Resources; DOES I-X, inclusive | 2. VIOLATION OF THE PUBLIC SAFETY OFFICERS PROCEDURAL BILL OF RIGHTS ACT, GOVERNMENT CODE SECTION 3300 ET. SEQ. |
| | 3. VIOLATION OF FREEDOM OF SPEECH |
| | 4. VIOLATION OF LABOR CODE §§1102, 1102, 1102.5 |
| Defendants. | 5. VIOLATION OF PENAL CODE §§832.5-832.8, EVIDENCE CODE §§1043-1046 |
| | 6. RETALIATION UNDER GOVERNMENT CODE §12900, ET SEQ. |
| | REQUEST FOR JURY TRIAL |

COMES NOW PLAINTIFFS SANTA ANA POLICE OFFICERS ASSOCIATION
and GERRY SERRANO and allege as follows:

1.      Plaintiff Santa Ana Police Officers Association (SAPOA) is the recognized

employee organization as defined under Government Code §3500, et seq., and/or

Government Code §3501(a). The SAPOA has as one of its primary purposes the

COMPLAINT

1 | representation of sworn and non-sworn employees of the Santa Ana Police Department
2 | in their employment relations with the City of Santa Ana and/or Santa Ana Police
3 | Department. In the sworn ranks the SAPOA represents all sworn officers holding the
4 | ranks of Police Sergeant and below, as well as Correctional Supervisor and below.

5 |      2.     Plaintiff Gerry Serrano has been since 2016, and now is, the President of
6 | the Santa Ana Police Officers Association and the recognized representative of the
7 | Santa Ana Police Officers Association as that term is used in Government Code
8 | §3502.1. He is also a sworn police officer, holding the rank of Police Sergeant with the
9 | Santa Ana Police Department.

10 |      3.     Defendant City of Santa Ana is a Municipal Corporation existing under the
11 | Constitution and the laws of the State of California. The City of Santa Ana is a public
12 | agency as that term is defined in Government Code §3501(c). It is a municipal entity
13 | employing public employees and thus, has a mandatory duty to comply with the
14 | provisions of Government Code §3300, et seq., and Government Code §3500, et seq.

15 |      4.     Defendant Santa Ana Police Department is a department of the City of
16 | Santa Ana and a public safety department, as that terms is used in Government Code
17 | §3309.5. Defendant Santa Ana Police Department is also a public agency, as that term
18 | is used in Government Code §3500, et seq.

19 |      5.     Defendant Kristine Ridge was and is the City Manager for the City of
20 | Santa Ana, and the direct supervisor/appointing authority of the Chief of Police and
21 | Human Resource Director. Ridge is the person responsible for the operations of the
22 | city, including the overall management of the City. Plaintiffs have information and belief
23 | that Ridge participated in, supervised and/or was actively involved in the incidents
24 | giving rise to this action in both her individual and official capacities.

25 |      6.     Defendant David Valentin was and is the appointed Chief of Police for the
26 | City of Santa Ana, Santa Ana Police Department. As such he is charged with the
27 | supervision and management of personnel, including personnel investigations and
28 | discipline of employees of the Santa Ana Police Department. Plaintiffs have information

and belief that Valentin participated in, supervised and/or was actively involved in the incidents giving rise to this action in both his individual and official capacities.

7.    Sonia Carvalho was and is a private attorney employed by the law firm of Best Best and Krieger LLP, and is the appointed and/or contracted City Attorney for the City of Santa Ana. Plaintiffs have information and belief that Carvalho participated in, supervised and/or was actively involved in the incidents giving rise to this action in both her individual and official capacities, and that she acted outside the scope of her duties as an attorney when engaging in acts described below.

8.    Defendant Jason Motsick was and is the appointed Human Resource Director for the City of Santa Ana and is charged with the supervision and management of personnel, including personnel investigations and discipline of employees of the Santa Ana Police Department. Plaintiffs have information and belief that Motsick participated in, supervised and/or was actively involved in the incidents giving rise to this action in both his individual and official capacities.

9. At all times herein mentioned, DOES I-X, inclusive, were the agents, servants and employees of Respondent, City of Santa Ana and/or Santa Ana Police Department, and in doing the things hereinafter alleged, were acting within the scope of their authority as such agents, servants and employees with the permission and consent of Respondents. Claimant will amend the Complaint to allege true names and capacities of DOES I-X, inclusive when ascertained.

**GENERAL FACTS**

10.    Serrano became President of the SAPOA in 2016 and has served continuously in the position.

11.    When seeking appointment as Chief of Police, Defendant Valentin sought out and received the support of Serrano and the SAPOA. Later, when the SAPOA and Serrano sought wages and benefits for the SAPOA membership and/or opposed Valentin on matters of concerns to the Plaintiffs, Valentin's demeanor and working relationship with Plaintiffs became adversarial.

3

1    12.    In or about February 2019, the City Council for the City of Santa Ana

2  passed a resolution adopting a Memorandum of Understanding that provided

3  significant, and needed salary increases for members of the SAPOA.  Two City

4  Councilpersons and Defendant Valentin opposed the raises.  Thereafter, the SAPOA

5  led a successful recall effort to remove the City Councilperson, causing Valentin to

6  become concerned with the SAPOA's and Serrano's political influence.

7    13.    Later, when Valentin attempted to obtain approval from the City Council to

8  create  an additional captain position so he could promote one of his allies,

9  SAPOA/Serrano opposed the creation of the position. The City Council sided with the

10  SAPOA/Serrano and did not create an additional captain position. Valentin became

11  emotionally upset and barked at Serrano that he needed to "STAND DOWN." It was

12  clear Valentin's concern about the SAPOA having more influence with the City Council

13  than he did was growing.

14    14.    Similarly, Defendant Carvalho began expressing to others that she did not

15  like Serrano. Thereafter, she would purposely interfere and obstruct items pertaining to

16  the SAPOA or Serrano.

17    15.    It is believed that Defendants Valentin and Carvalho formed a conspiracy

18  to attack Serrano and the SAPOA. Defendant Valentin and members of his police

19  management team have admitted animosity against Serrano as the President of the

20  Santa Ana Police Officers Association. This animosity has caused Defendant Valentin

21  and the management team under his guidance to treat members of the SAPOA

22  adversely if the employee is believed to be associated with or sought the aid of SAPOA

23  and/or SAPOA President Serrano. Due to this relationship, Defendant Valentin

24  purposely and intentionally interferes with the SAPOA's ability to represent its

25  membership and acts contrary to state law. Conversely, Valentin gives special

26  treatment and turns a blind eye to allegations of misconduct by those he believes will

27  either give their loyalty to him and/or oppose the SAPOA/Serrano.

28

1

**SPYING**

2        16.    In January, 2020, Defendant Valentin began spying on Plaintiff Serrano

3   and members of the Santa Ana City Council by redirecting copies of all e-mail

4   communications sent by Serrano to City Councilmember Solorio, from June 2017

5   forward, to his office. Defendant Valentin then had the City's IT department put a tracer

6   on all of Serrano's emails so that they would automatically be copied to Defendant

7   Valentin.

8                    **OTHER INTERFERENCE**

9        17.    During the last year and continuing to the present, Defendants have

10   censored membership communications and/or denied the SAPOA the ability to send

11   membership communications via the City's e-mail system.

12        18.    Defendant Valentin has engaged in action to advocate for a change of

13   leadership in the SAPOA and has attempted to interfere with SAPOA elections. Said

14   action includes, but is not limited to, encouraging candidates to run against Serrano for

15   the position of Association President, and questioning members' support for Serrano

16   when they are seeking special assignments and promotions.

17                **COMPLAINTS AGAINST LIEUTENANTS**

18        19.    In or about January, 2020, the SAPOA and Serrano were informed of

19   allegations of misconduct by SAPD Lieutenants/Commanders Jose Gonzalez and

20   Robert Rodriguez. It was alleged that the two were maliciously spreading rumors

21   regarding activities of Serrano and the SAPOA. Plaintiffs have information and belief,

22   and thereon allege, that said actions constitute violations of department policy and

23   negatively impact the morale of the police department as well as cause division in the

24   SAPOA. The Plaintiffs met with Defendant Valentin and informed him of the allegations

25   of misconduct. Valentin appeared dismissive. Since Valentin failed to initiate  an

26   investigation as required by Penal Code §§832.5-832.7, the SAPOA/Serrano reported

27   the information to Defendant Ridge. Again, no investigation was initiated of the police

28   commanders nor of Defendant Valentin.

5

1   20.   On or about June 8, 2021, Plaintiffs filed an official complaint regarding
2   the commanders' actions and the failure to investigate the allegations with Defendant
3   Motsick. Motsick also refused to initiate an investigation of the commanders and
4   Defendant Valentin.

5   **PERB COMPLAINT**

6   21.   In or about February, 2020, the SAPOA filed an Unfair Practice Charge
7   with the Public Employment Relations Board (PERB) alleging that the City of Santa Ana
8   had interfered with, intimidated, attempted to restrain and coerce members of the
9   Association and Gerry Serrano. The City informally resolved the matters, so the SAPOA
10  withdrew the charge.

11  **CAMPAIGN SIGNS**

12  22.   In April, 2020, Plaintiffs reported the theft of campaign signs related to a
13  recall of Santa Ana City Councilmember Iglesias. One of the identified suspects was
14  the City Council person herself. The SAPOA learned that a Police Commander directed
15  the investigating officer to alter his report so that the City Council person would not be
16  listed as the suspect. The Plaintiffs reported the Police Commander's actions to
17  Defendant Valentin.

18  23.   Instead of investigating the unlawful actions of the Police Commander,
19  Valentin ordered his Internal Affairs commander and investigators to conduct an
20  investigation of Serrano.

21  24.   When the Plaintiffs obtained a video recording showing the former City
22  Council  person stealing the campaign signs, Defendant Valentin, Defendant Carvalho
23  and other private attorneys employed by her firm, directly and through Valentin's
24  supporters pressured the Orange County District Attorney's office to open a criminal
25  case against Serrano. When the District Attorney's office rejected Valentin's pressures
26  Valentin became upset. With the help of Defendant Carvalho and her private law firm,
27  he began a lengthy letter and meeting campaign in which he chastised the District
28  Attorney's decision and knowingly included false information in the communications

6

COMPLAINT

1    with the District Attorney's office.

2         25.    As part of the April, 2020, efforts to wrongfully bring a criminal case

3    against Serrano, Defendants used department resources, including the Internal Affairs

4    unit, to draft memoranda with adverse comments about Serrano. Serrano was never

5    informed by Defendants of the internal investigation or memoranda, and Defendants

6    failed to allow Serrano to review the adverse comments. It is further believed, to the

7    extent that Defendants have initiated an Internal Affairs investigation, the investigation

8    was not completed within one year of notice of the allegations of misconduct nor has

9    Plaintiff Serrano been notified of any proposed discipline or outcome of the

10   investigation during that one year period. Defendants intentionally concealed the

11   information regarding this investigation and the related memoranda from Plaintiffs.

12                              **CULICHI TOWN COVER-UP**

13        26.    On August, 2020, on-duty SAPD officers responded to a call for service at

14   the Culichi Town Restaurant. The call involved allegations that off-duty SAPD officers

15   had sexually battered two underage girls that were at the restaurant. The officers

16   response was caught on body worn cameras and the victim's family produced a video

17   of the incident that showed off-duty police sergeant Oscar Lizardi as being present and

18   possibly involved in the incident. A Police Commander reported the incident to then IA

19   Commander, and now Deputy Chief, Robert Rodriguez. Rodriguez is believed to be a

20   close friend of Lizard. He denied the Commander's request for the incident to be

21   investigated.

22        27.    On or about September 2, 2020, a request for public records was made

23   for information related to the call including the Incident Detail Report, copy of the 911

24   emergency calls and/or non-emergency line calls, and police dispatch radio traffic audio

25   files related to the incident (Incident No. 200805316). Defendant Valentin, on

26   September 24, 2020, denied, in total, the PRA request in order to cover up the

27   misconduct of his IA Commander and one of his closest allies (Lizardi) asserting that

28   the records could not be released because they involved juveniles. This demonstrated

1  that Valentin was aware of the incident and that it involved allegations of criminal

2  conduct towards juveniles by off-duty SAPD officers.

3      28.    SAPOA/Serrano complained to Defendants about Valentin's and

4  Rodriguez's attempts to cover up alleged criminal conduct by officers who supported

5  Defendant Valentin pointing out that this conduct amounted to conspiring to commit a

6  criminal act. It is believed that it wasn't until June, 2021, after multiple complaints and

7  requests for investigations by the SAPOA, that Defendants initiated an investigation of

8  two of the three responding officers. The third responding officer was given a special

9  assignment on Lizardi's specialized team. In July, 2021, the Department initiated an

10  Internal Affairs investigation of one of the off-duty officers, but not Lizardi, who was the

11  ranking officer amongst the off duty personnel involved in the incident.

12      29.    On information and belief, Plaintiffs allege that Defendants have refused

13  to initiate an investigation of Deputy Chief Rodriguez and/or Defendant Valentin.

14                                    **PENSION ISSUE**

15      30.    In October, 2020, the Defendants inquired of CalPERS as to the propriety

16  of including a premium pay, called "Confidential" received by Serrano while on paid

17  release time to serve as the SAPOA President in the calculation of his pension. It is

18  believed that the City had never inquired about this issue with any prior SAPOA

19  President. When it appeared that there might be a question regarding the inclusion of

20  the premium in the calculation of Serrano's pension, the City and SAPOA reached an

21  agreement acceptable to CalPERS. However, because Serrano continued to carry out

22  his duty to represent the Association and its members, activity that is clearly protected

23  under the law, Defendants failed and refused to take the necessary steps to resolve the

24  issue.

25                                    **FPPC COMPLAINT**

26      31.    In November, 2020, Sonia Carvalho, believed to be acting on her own

27  personal vendetta and without City Council approvalsent a request to the California Fair

28  Political Practices Commission seeking a finding that Serrano, as the SAPOA

                                            8

1   President, engaged in a conflict of interest by negotiating a side letter agreement

2   related to the pension issue. As the City Council was scheduled to approve the

3   resolution of the pension issue, Carvalho made multiple inquiries to the FPPC for an

4   opinion letter finding Serrano was engaging in an unethical conflict of interest.

5   Ultimately, the FPPC found that Serrano did not engage in any conflict of interest nor

6   did his actions give rise to an unethical conflict of interest.  It is believed that Carvalho

7   was acting on her own and with the sole purpose of personally interfering with the

8   SAPOA/Serrano and/or with intent to harm Serrano.

9                               **FEMALE DISCRIMINATION COMPLAINTS**

10           32.     In or about November, 2020, SAPOA/Serrano informed Defendant Ridge

11   that there was ongoing discrimination against female employees in the Department.

12   Plaintiffs described  an incident involving female officers' attendance at a conference

13   regarding leadership issues for women in law enforcement and the Chief's behavior

14   towards those female employees. Defendant Ridge did not open an investigation into

15   the matter until months later when it was statutorily too late to take disciplinary action

16   against Defendant Valentin or his subordinates.

17           33.     After Plaintiffs informed Defendant Ridge of the discrimination and

18   harassment of the female officers, Defendant Valentin ordered a "preliminary

19   assessment" in order to cover up his and his staff's misconduct. The Human Resource

20   representative that appeared with him when he confronted the female officers

21   conducted the investigation. The female officers were ordered to appear for

22   interrogations. They were not provided any information as to the nature of the

23   investigation. When they appeared for interrogation, the HR Representative read from a

24   transcript, indicated that she was going to prepare a report that only went to Valentin,

25   and then questioned the females about the female's actions and did not have any

26   preset questions about Chief Valentin's, DC Esparza's or other police commander's

27   actions.

28           34.     On information and belief, it is alleged the Valentin lied to Defendant

9

1   Ridge and Defendant Motsick claiming that he had initiated an investigation of the

2   discrimination when, in fact, he initiated an investigation of the female officers in order

3   to silence them.

4       35.    The Defendants did not hire an investigator to look into these issues of

5   harassment and discrimination until April, 2021.

6       36.    On or about May 3, 2021, Plaintiffs filed a Notice of Claim against the City

7   of  Santa Ana, Santa Ana Police Department, Defendant Valentin, and Deputy Chief

8   Enriquez Esparaza related to the unlawful discrimination, harassment and investigation

9   of the female officers.

10      37.    Defendant has summarily dismissed the complaints from the

11  SAPOA/Serrano regarding the discrimination against female officers as just part of

12  Serrano's desire to fix his pension issue.

13  **JAIL MANAGEMENT COMPLAINT**

14      38.    On December 2, 2020, the SAPOA/Serrano sent an email to Defendant

15  Ridge and Defendant Valentin requesting an investigation of misconduct by jail

16  management/supervision wherein it was alleged that serious misconduct was being

17  covered up and/or not addressed, and that supervisors were being directed to falsify

18  reports and/or official documents.

19  **DISCLOSURE OF CONFIDENTIAL RECORDS**

20      39.    On or about February 25, 2021, a purported reporter with the Voice of OC

21  (an online nonprofit media source) sent to Sonia Carvalho, the City Attorney for the City

22  of Santa Ana and Santa Ana Police Department, a Public Records Act (PRA) request

23  seeking, a spreadsheet or breakdown of how many employees at the Santa Ana Police

24  Department have been put on paid administrative leave between 01/01/2016 and

25  2/25/2021. The PRA request included a request for Ms. Carvalho to provide the

26  reasons for the employees being put on paid administrative leave and a breakdown of

27  total costs to the City of Santa Ana incurred by paid administrative leave for Santa Ana

28  Police Department employees between 01/01/2016 and /25/2021.

40.     On or about March 26, 2021, without prior notice to the involved employees or the SAPOA and/or without complying with Penal Code §§832.5-832.8 and/or Evidence Code §1043-1046, the City Attorney's office, the City of Santa Ana, under the supervision of Defendant Ridge and/or the Santa Ana Police Department, under the supervision of Defendant Valentin, intentionally and purposely produced confidential records from the involved officers' personnel files. It is believed that this disclosure included data that identified the individual officers involved which is a clear violation of Penal Code §832.7(d).

41.     Defendants Carvalho, Valentin, Ridge, City of Santa Ana and/or the Santa Ana Police Department are aware that peace officer personnel records are confidential and exempt from disclosure.

42.     On or about April 21, 2021, Deputy Chief of Police Eric Paulson, on behalf of Defendant Valentin, conceded in a letter to the Voice of OC that confidential peace officer personnel had been produced to the Voice of OC, including, but not limited to the names of the officers in connection with administrative investigations. Deputy Chief Paulson requested that the confidential records be returned. Plaintiffs are informed and believe, and thereupon allege that after the Voice of OC refused to return the confidential records, Defendants failed to take any action to force the Voice of OC to return the documents.

43.     On or about April 27, 2021, Defendants started notifying certain of the impacted officers of the unlawful actions by Defendants. The Notification did not advise the impacted employees of what specific information had been released and did not notify them of any rights they may have. The notices also did not indicate if the Defendants would be taking further action to enforce the employees' rights.

44.     Also on or about April 27, 2021, Deputy Chief Paulson informed the Santa Ana Police Officers Association of the Defendants' unlawful disclosure of the confidential peace officer information of members of the Santa Ana Police Officers Association.  The notification of Defendants' unlawful action did not identify to the POA

1  the names of the impacted members/officers, but simply stated that the effected

2  employees had been notified. As it turned out, when Deputy Chief Paulson claimed, on

3  behalf and presumably at the directions of Defendants, that all affected employees had

4  been notified, the statement was not true and appears to have been an intentional

5  misrepresentation by Defendants to conceal the fact that the notifications to the

6  effected employees had just begun.

7      45.    The Santa Ana Police Officers Association filed a written complaint with

8  the Defendant City Manager Kristine Ridge, and Human Resource Director Jason

9  Motsick requesting that the matter be immediately investigated. Plaintiffs are informed

10  and believe, and thereupon allege that even though the Defendants were required to

11  investigate this matter, as a "citizen complaint" pursuant to Penal Code §§832.5-832.7,

12  Defendants did not investigate nor discipline those city employees responsible for the

13  violations of law.

14      46.    On or about April 28, 2021, a number of affected officers and the Santa

15  Ana Police Officers Association, which has a legal right to represent its members in any

16  and all matters related to their employment with the Santa Ana Police Department,

17  requested copies of any and all communications regarding PRA #21-289, including all

18  e-mails between representatives of the City, Police Department and/or Voice of OC and

19  also requested copies of all records that were produced to the Voice of OC and a list of

20  the impacted officers. Defendants, as part of an ongoing plan and scheme to

21  undermine and interfere with the POA's ability to represent its members, denied the

22  POA's request for copies of the produced records and list of names of impacted

23  employees. Defendants refused to provide copies of the unlawfully released information

24  and/or the list of names of the impacted employees.

25      47.    Also on April 28, 2021, Defendants Motsick, Valentin, Ridge and Carvalho

26  issued a letter wherein they indicated that City was terminating the SAPOA's long

27  standing ability to send emails to communications to all SAPOA members through the

28  City's email system.

1    48.    On or about May 3, 2021, Plaintiffs filed a Notice of Claim against

2  Defendants City of Santa Ana, Santa Ana Police Department and Defendant Valentin

3  regarding their unlawful disclosure of confidential peace officer records.

4    49.    Defendant Ridge and Carvalho have summarily dismissed the complaints

5  from the SAPOA/Serrano regarding the unlawful disclosure of records as just part of

6  Serrano's desire to fix his pension issue.

7                    **FALSE INFORMATION TO CITY COUNCIL MEMBER**

8    50.    On or about May 12, 2021, the SAPOA/Serrano learned that Santa Ana

9  City Councilmember Penaloza had complained to Defendant Valentin that officers from

10 Valentin's special unit (MET), which is supervised by Sgt. Lizardi, had shined the patrol

11 vehicle's ally lights at him while he was driving on multiple occasions. It was further

12 learned that Defendant Valentin tried to falsely blame the SAPOA and Serrano for the

13 officers' alleged actions.

14                          **COMPLAINT AGAINST VALENTIN**

15   51.    On or about May 13, 2021, the SAPOA/Serrano filed a complaint on

16 behalf of the members of the SAPOA against Defendant Valentin and his police

17 management similar to that made in November, 2020. SAPOA raised issues regarding

18 unaddressed gender discrimination; unaddressed cover-up of the Culichi Town incident;

19 allegations that Valentin committed perjury in at least one deposition; the inclusion of

20 false information in official personnel records; Jail Managers covering up alleged

21 misconduct by employees and/or falsifying records/reports related to the misconduct;

22 interference in a criminal investigation where a former City Council person was initially

23 listed as the suspect until the officer was directed to change his report; and interference

24 with Association activities and/or representation of members.

25   52.    In response to the May 13, 2021, complaint, Defendants either failed to

26 initiate an investigation, as required by Penal Code §§832.5-832.7 and/or failed to

27 report to the complainant the outcome of the investigation(s).

28 53.    Defendant Ridge and Carvalho have summarily dismissed the complaints from

                                          13

1    the SAPOA/Serrano as just part of Serrano's desire to fix his pension issue.

2                        **CITY MANAGER DISCIPLINARY ACTION**

3            54.     In order to try to silence the SAPOA/Serrano, on or about May 18, 2021,

4    Defendant Ridge issued a disciplinary document entitled "Employee Conduct Warning

5    Letter" to Serrano for acts he undertook as the "advocate and leader of the SAPOA"

6    which Defendant Ridge argued violated the City Charter and police department policies.

7    Under the provisions of Government Code §3300, et seq., this document constituted a

8    written reprimand and punitive actions as that term is used under Government Code

9    §§3303 and 3304.

10           55.     Under the City Charter Defendant Ridge does not have the ability to

11   discipline a police sergeant as she is not the appointing authority for the police

12   department. Therefore, Ridge's actions were outside her official capacity and

13   demonstrated that she was acting in excess of her authority in order to discriminate,

14   harass and retaliate against Serrano and the SAPOA.

15           56.     The May 18, 2021, Employee Conduct Warning Letter specifically initiated

16   punitive action against Serrano, as the President of the SAPOA, for communicating (via

17   text and e-mail) to elected officials raising issues with the management of the Police

18   Department. The Warning Letter also directed Serrano, as the President of the SAPOA

19   not to communicate regarding police management issues with the Santa Ana City

20   Council.

21           57.     Serrano, on May 20, 2021, invoked his rights under POBRA and

22   requested all documentation supporting Defendant Ridge's allegations of misconduct,

23   and all complaints giving rise to the punitive action. Serrano also invoked his right to an

24   administrative appeal under Government Code §3304. Defendants have failed and

25   refused to provide Serrano any documents supporting the allegations contained in

26   Ridge's letter and have refused to afford him any administrative appeal of the punitive

27   action imposed against him.

28                          **INVESTIGATION OF SERRANO**

58.     On or about May 27, 2021, Defendant Valentin ordered an investigation of Serrano based on alleged comments Serrano made in his capacity as the current President of the SAPOA about a former SAPOA President in October, 2020. The investigation was opened even though legal counsel for the City of Santa Ana indicated, in writing that to the extent Serrano's statements were made as a POA President, Mr. Serrano was not speaking as a police sergeant of the City or the Santa Ana Police Department, and acknowledged that the City was not able to restrict the conduct of the POA and/or its President which relate to the administration of the POA as such action would be a violation of the Meyers-Milias Brown Act. (See Government Code section 3506.5(d).). Counsel for the City acknowledged, therefore, the City was not able to direct Mr. Serrano to engage or not engage in conduct that is done in his capacity as President of the POA in relation to the administration of the POA.

59.     Evidently, the City of Santa Ana had to pay the former POA President and his wife approximately $350,000.00, as Defendants had allegedly retaliated against the former POA President and Defendant Valentin sexually harassed the former POA President's wife. Thereafter, the former POA President, in an effort to obtain more money from the City, alleged that Serrano violated the settlement agreement even though Serrano was not a party to the action or the agreement. On or about October 26, 2020 when the City would not pay any additional money, the former POA President filed a written complaint against Serrano.

60.     It appeared that the City was not going to take action on the frivolous complaint, but Defendant Valentin and possibly others, in order to further retaliate against Serrano and the SAPOA, initiated the investigation nine months later. To this date, Defendants have not notified Serrano of the outcome of the investigation and the one year statute of limitations has expired.

**SEXUAL HARASSMENT ALLEGATIONS**

61.     On June 16, 2021, Defendants Motsick and Carvalho scheduled a meeting with Serrano without informing him of the nature of the meeting. Serrano

15

1  appeared with legal counsel. After arriving Serrano was informed that Defendants

2  Motsick and Carvalho were conducting "fact-finding" regarding allegations they had

3  been made aware of by a third party. The allegation was that Defendant Ridge had

4  sexually harassed Serrano. Being caught off guard, Serrano, on advice of counsel, did

5  not make any statement. It was clear at that point that the City was not protecting

6  Serrano from retaliation by the other Defendants.

7       62.    Even though Serrano had not filed a complaint against Defendant Ridge,

8  Defendants feared that Serrano had disclosed or might disclose information of unlawful

9  activities by Defendant Ridge.

10      63.    As discussed below, it was later learned that approximately a month

11  earlier Ridge "self-reported" the harassment allegations to Defendant Carvalho and her

12  subordinate Defendant Motsick. In a letter to the City Council Ridge was careful in her

13  assertion, making allegations that Serrano had been untruthful and interfered in

14  investigations, but not specifically denying allegations that she sexual harassed

15  Serrano. In that same letter to the City Council Ridge violated state law by disclosing

16  closed session communications with the Council as well as disclosing confidential

17  personnel information about a peace officer to wit, Serrano.

18      64.    Ridge's disclosures to the City Council reveal that Carvahlo and Motsick

19  were not simply conducting a fact finding investigation, but were investigating Ridge's

20  allegations against Serrano who should have been afforded his rights under the Peace

21  Officers Procedural Bill of Rights.

22      65.    On July 7, 2021, Defendant Ridge, fearing the Serrano would report her

23  unlawful activities, directed Serrano to refrain from sending any e-mail communications

24  to her. In essence, Defendant Ridge gave direct orders to the President of the SAPOA

25  not to contact elected officials or herself with any issues or complaint.

26      66.    On July 9, 2021, Plaintiff filed a Notice of Claim (Gov't Code §910, 910.4)

27  with Defendants.

28      67.    On or about July 16, 2021, the City of Santa Ana hired the law firm of

1   Barboza & Associates to assist Motsick in conducting a personnel investigation into

2   Serrano's possible allegations of harassment even though Serrano had not made any

3   such allegations. However, when Plaintiffs tried to determine who retained Barboza,

4   and whether she was working independently or as an agent/attorney for the City, she

5   refused to answer. Plaintiffs made the same inquiry of Defendant Motsick on July 21st,

6   but never received a response.

7        68.    It was later confirmed that Barboza and Associates was hired to provide

8   legal advice to the City regarding the investigations thus creating an attorney-client

9   relationship and a duty of Barboza and Associates to find in a manner to protect their

10  clients. The City specifically prohibited the firm to render any determination about

11  unlawful discrimination, harassment, violation of public policy or any other violations of

12  law or statute. Therefore, there was no reason for Serrano to participate in

13  investigations that could not result in a legal determination.

14       69.    On or about July 19, 2021, Defendant Ridge, trying to minimize her

15  misconduct and redirect attention from the allegations of misconduct against her, sent a

16  letter to the Mayor and City Council falsely claiming that all complaints and tort claims

17  coming from the SAPOA and its members were singularly focused on Serrano's

18  pension issues. In the letter to the Mayor and City Council Ridge revealed confidential

19  personnel file information of Serrano in violation of state law. Ridge also tried to defame

20  Serrano in order to diminish his credibility if he was to come forward with allegations of

21  sexual harassment.

22       70.    It became clear that Ridge's letter dated July 19, 2021, was meant to

23  tarnish Serrano and the SAPOA and to be produced to mass audiences. In fact, on

24  August 3, 2021, the Voice of OC contacted Serrano and advised him that it had been

25  given copies of the letter and the disciplinary letter which outline allegations against him

26  by the City Manager and City Attorney. According to the records they were provided the

27  Voice of OC indicated that both Kristine Ridge and Sonia Carvalho claimed Serrano

28  had caused harm to the city through his pursuit of higher compensation including filing

17

1   unsubstantiated legal claims, threats to 'burn the place down' and 'make disclosures

2   that will hurt people" and asking elected officials to put pressure on the city manager.

3   Ridge and Carvahlo conspired to release confidential communications to the media in

4   violation of Penal Code §§832.5- 832.8 and/or Evidence Code §§1043-1046 and/or the

5   Brown Act.

6        71.    Two days later, even though Ridge had ordered Serrano not to have

7   contact with her, she attempted to contact Serrano on his personal phone. Serrano

8   knew better and did not take the call.

9        72.    On July 29, 2021, the City rejected the Government Tort Claim filed

10   related to the above issues. The City chose not to try to resolve the matter or conduct

11   investigations prior to issuing the rejection. It appears that the Defendants are intent on

12   forcing the parties to litigate the City's liability. The use of Ms. Barboza's services is just

13   to obtain statements in an effort to defend the anticipated lawsuit.

14        73.    The City is believed to have closed its "sexual harassment investigation"

15   of Defendant Ridge without conducting a single interview and without questioning

16   Defendant Ridge regarding her alleged illegal and/or harassing conduct.

17                 **SAPOA ASSISTS MEMBERS IN FILING COMPLAINTS**

18        74.    On July 20, 2021, the SAPOA supported the filing of a citizen complaint

19   by one of the Association's members against Defendant Valentin alleging retaliation

20   and creating a hostile working environment for the member that was known to support

21   the SAPOA/Serrano. The Defendants assigned the investigation to an outside

22   investigator, but failed to notify the complainant of the outcome of the investigation.

23        75.    On or about August 19, 2021, the SAPOA supported the filing of a citizen

24   complaint by one of the Association's members against Sgt. Oscar Lizardi for

25   allegations of engaging in intimidation and threats against a member who Lizardi

26   believed supported the SAPOA's vote of no confidence against Defendant Valentin.

27   The Defendants assigned the investigation to an outside investigator, but failed to notify

28   the complainant of the outcome of the investigation.

76.    On or about August 19, 2021, the SAPOA supported the filing of a citizen complaint by one of the Association members against Sgt. Oscar Lizardi for allegation of witness intimidation related to an internal affairs investigation that Defendant Valentin ordered against a supporter of the SAPOA/Serrano. The Defendants assigned the investigation to an outside investigator, but failed to notify the complainant of the outcome of the investigation.

**VOTE OF NO CONFIDENCE**

77.    On July 8, 2021, Plaintiffs notified Defendant Ridge and Motsick that the Board of Directors had unanimously voted to send out a Vote of No Confidence ballot regarding Defendant Valentin.

78.    In August, 2021, the SAPOA Board of Directors issued a Memorandum regarding the Vote and raised a number of issues for the membership to consider.

79.    On or about August 25, 2021, Charles Goldwasser, who serves as General Counsel to the Santa Ana Police Officers Association, wrote Defendant Valentin and Defendant Ridge regarding on-duty harassment and verbal pressure against SAPOA members by Sergeant Lizardi.  The conduct interfered with these officers' ability to perform their duties. The Santa Ana Police Officers' Association requested that the City of Santa Ana issue a reminder about this type of on-duty conduct taking place at the Police Department. Plaintiff Serrano, as the President of the SAPOA, followed-up Mr. Goldwasser's communication with an email to Defendant Motsick acknowledging that his members were reporting their working conditions were becoming unbearable and reminding the City that an unchecked hostile work environment, especially where the employees are armed, could result in a bad situations occurring.

80.    On August 26, 2021, during a time the SAPOA was considering a "Vote of No Confidence" in Defendant Valentin, Valentin in coordination with Defendants Carvalho, Ridge and Motsick, tried to silence SAPOA President Gerry Serrano by placing him on administrative leave and restricting his access to, and use of, the

19

1  City/Police Department e-mail system. In order to place Serrano on administrative

2  leave, Defendant Valentin, or his underlings, specifically ordered Commander Sorenson

3  to leave the Notice of Administrative Leave/Fitness for Duty Exam at Serrano's

4  residence where it was found by his son.

5         81.    The order to undergo the Fitness for Duty Exam specifically references

6  Mr. Serrano's August 26, 2021, 5:05 a.m., email to Defendant Motsick as the sole basis

7  for the exam. Therefore, because Mr. Serrano decided that it was necessary, as the

8  SAPOA President, to reaffirm the seriousness of the issues, Defendants ordered

9  Serrano to undergo a Fitness for Duty Examination.

10        82.    Serrano, via counsel, objected to the Fitness for Duty Examination as

11  being unlawful. He invoked his rights under Government Code §3300, et seq., including

12  Government Code §3305 and/or Government Code §3306.5 (requesting copies of

13  and/or access to any and all documents being used or have been used to determine

14  that officer's qualifications for employment, promotion, additional compensation, or

15  termination or other disciplinary action).

16        83.    In response to Plaintiff's assertion of rights and request for materials

17  Defendants intentionally falsified a letter to Serrano's attorney by including claims that

18  Serrano had not been ordered to sign any releases. Defendants denied the request for

19  materials.

20        84.    It was subsequently discovered that Defendants did not comply with their

21  own policy regarding Fitness for Duty and/or Fitness for Duty Examinations.

22        85.    Police Commander Sorrenson was ordered not to retrieve department

23  issued equipment from Mr. Serrano at the SAPOA officce, but instead to order him to

24  report to the police station. The applicable Memorandum of Understanding specifically

25  states: "The Association and the City of Santa Ana agree that the Association's

26  representative will not be required to carry out any peace officer's duties during such

27  time that the Association's representative is on such full-time release from duty. The

28  Association's representative will be required to comply with the Rules and Regulations

of the Santa Ana Police Department as they apply to off-duty employees, except such representative ill not be required to report for duty for any purpose. Defendants breached of the MOU by ordering Mr. Serrano to appear for a FFDE and to report to the police station.

86.    Moreover, the Police Department Fitness for Duty policy indicates that its purpose and scope is directly related to the exercise of peace officers powers, but the MOU releases Mr. Serrano from any such exercise. Furthermore, the Fitness for Duty policy governs on-duty conduct, not off-duty.

87.    Plaintiff initiated a grievance, but that matter was futile as it was to be heard by the City Manager that had ordered Serrano not to have contact with her. Defendants then had Defendant Motsick conduct the grievance hearing even though he was the one that initiated the FFDE by claiming Serrano's e-mail was threatening.

88.    On September 1, 2021, the SAPOA disclosed the results of the Vote of No Confidence. More than a majority of the members that voted indicated that they had no confidence in the Chief of Police. That same day Defendant Valentin responded to the membership vote by targeting Serrano. Defendant Valentin falsely attributed the SAPOA's actions as Serrano's personal pension dispute and not about the facts giving rise to the Vote. Defendant Valentin accused Serrano of making false and frivolous claims, and engaging in crimes and corruption when Defendant Valentin knew these allegations against Serrano were false.

89.    With the grievance over the FFDE pending and unresolved, Defendants *ordered* Serrano to appear for the exam and undergo hours of questioning by the contract doctor. The Defendants did not pay Serrano for his time at the FFDE examination.

90.    On September 14, 2021, Serrano was found to be fit for duty and removed from administrative leave. After Serrano was found to be fit for duty Defendant Motsick finally held a grievance meeting and later summarily rejected the grievance. Finally, even though Plaintiffs raised issues of retaliation and hostile environment

1  Defendants have not even attempted to investigate these claims.  Therefore, Plaintiffs

2  have exhausted all administrative remedies related to the FFDE.

3       91.     Additionally, even though Serrano had been removed from Administrative

4  Leave, the locker assigned to him by the Police Department was secured so Serrano

5  could not access it. It was visible to any person that walked into the locker room that the

6  locker was still being secured by the Department.

7       92.     Plaintiffs request a jury trial on all non-mandamus relief.

8       93.     Plaintiff has no plain, speedy or adequate remedy under the law.

9  Pursuant to Government Code Section 3309.5, Plaintiff need not pursue any

10  administrative remedy in order to address this problem; thus, Plaintiff is excused from

11  or has exhausted his administrative remedies. This court is given initial jurisdiction over

12  this matter pursuant to Government Code §3309.5.

13       94.     To the extent facts, incidents and/or issues described above were learned

14  and/or occurred after Plaintiffs' filed their Government Tort Claim, Plaintiffs only seek

15  mandamus and/or injunctive relief to cure the violations and prevent future violations of

16  a similar nature. Once Plaintiffs has processed and/or the Defendants rejected any

17  such supplemental claim, Plaintiffs will amend this Complaint accordingly.

18                          **VENUE AND JURISDICTION**

19  95.Venue is proper in the Superior Court of the State of California, for the County of

20  Orange in that the underlying acts, omissions, injuries and related facts and

21  circumstances giving rise to the present action occurred in the City of Santa Ana,

22  County of Orange, California. This Court has jurisdiction over the present matter

23  because, as delineated within this complaint, the nature of the claims and amount in

24  controversy meet the requirements of jurisdiction in the Superior Court. This Court is

25  empowered with initial jurisdiction to entertain suits brought pursuant to California

26  Government Code §3300, et seq., and for traditional mandamus action.

27                          <u>**FIRST CAUSE OF ACTION**</u>

28                          <u>Against All Defendants</u>

                                   22
_____
                               COMPLAINT

<u>Violation of Government Code §3500, et seq</u>.

96.   Plaintiffs Santa Ana Police Officers Association and Gerry Serrano for a First Cause of Action against all Defendants for violations of Government Code §3500, et seq., re-allege paragraphs 1-95, above, and further allege as follows:

97.   Government Code §3502 provides, in pertinent part, public employees shall have the right to form, join, and participate in the activities of employee organizations of their own choosing for the purpose of representation on all matters of employer-employee relations.

98.   Government Code §3502.1 provides that "No public employee shall be subject to punitive action or denied promotion, or threatened with any such treatment, for the exercise of lawful action as an elected, appointed, or recognized representative of any employee bargaining unit."

99.   Government Code §3503 provides, in pertinent part, that "Recognized employee organizations shall have the right to represent their members in their employment relations with public agencies."

100.   Government Code §3504 provides, in pertinent part, that the scope of representation shall include all matters relating to employment conditions and employer-employee relations, including, but not limited to, wages, hours, and other terms and conditions of employment.

101.   Government Code §3506 provides that "Public agencies and employee organizations shall not interfere with, intimidate, restrain, coerce or discriminate against public employees because of their exercise of their rights under Section 3502."

102.   Government Code §3506.5 provides, in pertinent part, that a public agency shall not do any of the following: (a) Impose or threaten to impose reprisals on employees, to discriminate or threaten to discriminate against employees, or otherwise to interfere with, restrain, or coerce employees because of their exercise of rights guaranteed by this chapter; (b) deny to employee organizations the rights guaranteed to them by this chapter; (d) dominate or interfere with the formation or administration of

1   any employee organization, contribute financial or other support to any employee

2   organization, or in any way encourage employees to join any organization in preference

3   to another.

4        103.  Defendants, and each of them, in undertaking the acts and/or omissions

5   listed above, violated the above provisions of the Meyers-Milias-Brown Act (MMBA),

6   including, but not limited to interfering with, intimidating, restraining, coercing and/or

7   discriminating against the SAPOA, Gerry Serrano and/or other public employees who

8   are members of the SAPOA because of their exercise of their rights under this Act.

9        104.  Defendants, and each of them, have engaged in acts and/or omissions, as

10  alleged above, wherein they have 1) subjected Serrano to punitive actions and/or

11  threatened him with said actions; 2) imposed or threatened to impose reprisals on

12  Serrano, 3) discriminated or threatened to discriminated against him; 3) otherwise

13  interfered with, restrained, or coerced Serrano because of his exercise of rights

14  guaranteed by the MMBA, and/or for the exercise of lawful action as an elected,

15  appointed, or recognized representative of any employee bargaining unit..

16       105.  The duty to obey the laws set forth in Government Code §3500, et seq., is

17  a ministerial duty and is not discretionary. By acting, and failing to act, as set forth

18  above, defendants have violated a ministerial duty. Moreover, the acts and/or omissions

19  of defendants, set forth above, demonstrate that defendants' failure to comply with

20  Government Code §3500, et seq., was illegal as a matter of law under Government

21  Code section 1222, which makes a public officer's "willful omission to perform any duty

22  enjoined by law" a misdemeanor.

23       106.  Each and every act listed above, individually or jointly, constitutes a

24  violation of Government Code §3500, et seq., and therefore this court should render

25  appropriate injunctive or other extraordinary relief to remedy the violation and to prevent

26  future violations of a like or similar nature, including, but not limited to, the granting of a

27  temporary restraining order, a preliminary injunction and a permanent injunction, or, in

28  the alternative, a Writ of Mandate prohibiting the Santa Ana Police Department from

1    taking any punitive action against any public safety officer member of the SAPOA.

2    Plaintiffs specifically seek a "make whole" remedy.

3         107.   The above articulated violations were proximately caused by City's

4    deliberate indifference to its employee's violations of the Meyer-Milias Brown Act, and

5    the failure to train and control its officers and representatives on the provisions of these

6    Acts. The violations set forth above were proximity caused by the customs, practices,

7    policies and decisions of the defendants.

8         108.   Unless this court issues a preliminary and permanent injunction enjoining

9    and restraining defendants, and each of them, and their agents, employees and

10   servants, from ordering, requiring, commanding, or taking any other action that will

11   result in violations of Plaintiffs' rights, Plaintiffs will suffer irreparable harm in that its/his

12   rights, as afforded by Government Code §3500, et seq., will be violated without any

13   remedy being afforded.

14        109.   Plaintiffs have attempted, without success, to exhaust any and all

15   administrative remedies afforded to them to deal with these issues, but such efforts are

16   futile as the named defendants are the ones that make the final decisions via any

17   complaints, grievances or other administrative actions.

18        110.   Plaintiff requests this court to award damages and attorney fees pursuant

19   C.C.P. §1090 and 1095.

20        111.   In bringing this action, Petitioners have sought enforcement of an important

21   right affecting the public interest which will result in the conferring of a significant benefit

22   upon a large class of persons, to wit, public employees, thereby entitling Petitioners to

23   an award of attorneys' fees pursuant to Code of Civil Procedure §1021.5.

24        112.   The actions of defendants, and each of them, were arbitrary and capricious

25   and, therefore, Plaintiff is entitled to recover attorneys' fees pursuant to Government

26   Code §800.

27                          **SECOND CAUSE OF ACTION**

28                            Against All Defendants

1          <u>Violation of Government Code §3300, et seq.</u>

2          113.  Plaintiffs Santa Ana Police Officers Association and Gerry Serrano for a

3    Second Cause of Action against all Defendants for violations of Government Code

4    §3300, et seq., relief re-alleges paragraphs 1-112, above, and further allege as follows:

5          114.  Government Code §3301 provides, in pertinent part, that "The Legislature

6    hereby finds and declares that the rights and protections provided to peace officers

7    under this chapter constitute a matter of statewide concern. The Legislature further

8    finds and declares that effective law enforcement depends upon the maintenance of

9    stable employer-employee relations, between public safety employees and their

10   employers. In order to assure that stable relations are continued throughout the state

11   and to further assure that effective services are provided to all people of the state, it is

12   necessary that this chapter be applicable to all public safety officers, as defined in this

13   section, wherever situated within the State of California."

14         115.  Government Code §3302 provides, in pertinent part, that except as

15   otherwise provided by law, or whenever on duty or in uniform, no public safety officer

16   shall be prohibited from engaging, or be coerced or required to engage, in political

17   activity.

18         116.  Government Code §3303 provides, in pertinent part, that when any public

19   safety officer is under investigation and subjected to interrogation by his or her

20   commanding officer, or any other member of the employing public safety department,

21   that could lead to punitive action, the interrogation shall be conducted under the

22   following conditions. For the purpose of this chapter, punitive action means any action

23   that may lead to dismissal, demotion, suspension, reduction in salary, written

24   reprimand, or transfer for purposes of punishment.

25              (a) The interrogation shall be conducted at a reasonable hour, preferably

26              at a time when the public safety officer is on duty, or during the normal

27              working hours for the public safety officer, unless the seriousness of the

28              investigation requires otherwise. If the interrogation does occur during off-

26

duty time of the public safety officer being interrogated, the public safety officer shall be compensated for any off-duty time in accordance with regular department procedures, and the public safety officer shall not be released from employment for any work missed.

(b) The public safety officer under investigation shall be informed prior to the interrogation of the rank, name, and command of the officer in charge of the interrogation, the interrogating officers, and all other persons to be present during the interrogation. All questions directed to the public safety officer under interrogation shall be asked by and through no more than two interrogators at one time.

(c) The public safety officer under investigation shall be informed of the nature of the investigation prior to any interrogation.

(e) The employer shall not cause the public safety officer under interrogation to be subjected to visits by the press or news media without his or her express consent nor shall his or her home address or photograph be given to the press or news media without his or her express consent.

(g) The complete interrogation of a public safety officer may be recorded. If a tape recording is made of the interrogation, the public safety officer shall have access to the tape if any further proceedings are contemplated or prior to any further interrogation at a subsequent time. The public safety officer shall be entitled to a transcribed copy of any notes made by a stenographer or to any reports or complaints made by investigators or other persons, except those which are deemed by the investigating agency to be confidential. No notes or reports that are deemed to be confidential may be entered in the officer's personnel file. The public safety officer being interrogated shall have the right to bring his or her own recording device and record any and all aspects of the interrogation.

27

117.  Government Code §3304(a) provides that "No public safety officer shall be subjected to punitive action, or denied promotion, or be threatened with any such treatment, because of the lawful exercise of the rights granted under this chapter, or the exercise of any rights under any existing administrative grievance procedure.

118.  Government Code §3304(b) provides, in pertinent part, "No punitive action, nor denial of promotion on grounds other than merit, shall be undertaken by any public agency against any public safety officer who has successfully completed the probationary period that may be required by his or her employing agency without providing the public safety officer with an opportunity for administrative appeal."

119.  Government Code §3304(d) (1) reads "Except as provided in this subdivision and subdivision (g), no punitive action, nor denial of promotion on grounds other than merit, shall be undertaken for any act, omission, or other allegation of misconduct if the investigation of the allegation is not completed within one year of the public agency's discovery by a person authorized to initiate an investigation of the allegation of an act, omission, or other misconduct. This one-year limitation period shall apply only if the act, omission, or other misconduct occurred on or after January 1, 1998. In the event that the public agency determines that discipline may be taken, it shall complete its investigation and notify the public safety officer of its proposed discipline by a Letter of Intent or Notice of Adverse Action articulating the discipline that year, except as provided in paragraph (2). The public agency shall not be required to impose the discipline within that one-year period."

120.  Government Code §3305 provides that no public safety officer shall have any comment adverse to his interest entered in his personnel file, or any other file used for any personnel purposes by his employer, without the public safety officer having first read and signed the instrument containing the adverse comment indicating he is aware of such comment, except that such entry may be made if after reading such instrument the public safety officer refuses to sign it. Should a public safety officer refuse to sign, that fact shall be noted on that document, and signed or initialed by such officer.

121.  Government Code §3306 reads "A public safety officer shall have 30 days within which to file a written response to any adverse comment entered in his personnel file. Such written response shall be attached to, and shall accompany, the adverse comment."

122. Government Code §3306.5. provides, in pertinent part, that (a) Every employer shall, at reasonable times and at reasonable intervals, upon the request of a public safety officer, during usual business hours, with no loss of compensation to the officer, permit that officer to inspect personnel files that are used or have been used to determine that officer's qualifications for employment, promotion, additional compensation, or termination or other disciplinary action; (b) Each employer shall keep each public safety officer's personnel file or a true and correct copy thereof , and shall make the file or copy thereof available within a reasonable period of time after a request therefor by the officer."

123.  Government Code §3309 provides that "No public safety officer shall have his locker, or other space for storage that may be assigned to him searched except in his presence, or with his consent, or unless a valid search warrant has been obtained or where he has been notified that a search will be conducted. This section shall apply only to lockers or other space for storage that are owned or leased by the employing agency.

124.  Government Code §3309.5(a) provides "It shall be unlawful for any public safety department to deny or refuse to any public safety officer the rights and protections guaranteed to him or her by this chapter."

125.  Government Code §3309.5 further provides, in pertinent part, "(d) (1) In any case where the superior court finds that a public safety department has violated any of the provisions of this chapter, the court shall render appropriate injunctive or other extraordinary relief to remedy the violation and to prevent future violations of a like r similar nature, including, but not limited to, the granting of a temporary restraining order, preliminary injunction, or permanent injunction prohibiting the public safety

29

department from taking any punitive action against the public safety officer" and "(e) In addition to the extraordinary relief afforded by this chapter, upon a finding by a superior court that a public safety department, its employees, agents, or assigns, with respect to acts taken within the scope of employment, maliciously violated any provision of this chapter with the intent to injure the public safety officer, the public safety department shall, for each and every violation, be liable for a civil penalty not to exceed twenty-five thousand dollars ($25,000) to be awarded to the public safety officer whose right or protection was denied and for reasonable attorney's fees as may be determined by the court. If the court so finds, and there is sufficient evidence to establish actual damages suffered by the officer whose right or protection was denied, the public safety department shall also be liable for the amount of the actual damages."

126.  As described above, Plaintiff Gerry Serrano was the subject of numerous investigations that could result in punitive action. One investigation was conducted by Defendants Carvalho and Motsick after Defendant Ridge complained that Serrano was making false statements about her. Serrano was not told, prior to his interview, that Carvalho would be present, was not informed of the nature of the investigation prior to arriving, was not told, nor afforded the opportunity to record the interview.

127.  In other administrative investigations conducted under the orders of Defendant Valentin, Serrano was not compensated for his time in the interrogations.

128.  Defendant Ridge issued punitive action against Serrano and when he sought an administrative appeal and the documents purportedly supporting the punitive action, both requests were denied.

129.  Defendant Valentin has placed or caused to be placed in Serrano's personnel file and/or files used for personnel purposes adverse comments without affording Serrano the ability to review the documents containing the adverse comments.

130.  Defendant Valentin has ordered administrative investigations to be conducted well in excess of the one year statute of limitations, and has not provided notice of the investigations or the outcome of the investigations to Serrano.

COMPLAINT

131.  Serrano has requested to review documents used for personnel purposes but has been denied the opportunity to do so.

132.  Serrano has information and believe that his department issued locker and/or other space for storage (including his department issued email storage system) has been searched outside of his presence and/or without his knowledge/consent or valid search warrant.

133.  Serrano, while acting as the President of the SAPOA, and while off-duty and out of uniform has been prohibited from engaging in political activity.

134.  Serrano has been threatened with punitive action because of the lawful exercise of the rights granted by Government Code §3300, et seq., and/or exercising rights under existing administrative grievance procedures.

135.  The duty to obey the laws set forth in Government Code §3300, et seq., is a ministerial duty and is not discretionary. By acting, and failing to act, as set forth above, defendants have violated a ministerial duty. Moreover, the acts and/or omissions of defendants, set forth above, demonstrate that defendants' failure to comply with Government Code §3300, et seq., was illegal as a matter of law under Government Code section 1222, which makes a public officer's "willful omission to perform any duty enjoined by law" a misdemeanor.

136.  Each and every act listed above, individually or jointly, constitutes a violation of Government Code §3300, et seq., and therefore this court should render all available and proper relief under Government Code §3309.5 to remedy the violations and to prevent future violations of a like or similar nature. Plaintiffs specifically seek a "make whole" remedy.

137.  For those acts identified in the already filed Government Tort Claim, Plaintiffs further seek all relief afforded under Government Code §3309.5(e).

138.  The above articulated violations were proximately caused by City's indifference to its employee's violations of the Public Safety Officers Procedural Bill of Rights Act, and the failure to train and control its officers and representatives on the

provisions of this Act. The violations set forth above were proximity caused by the customs, practices, policies and decisions of the defendants.

139.  Unless this court issues a preliminary and permanent injunction enjoining and restraining defendants, and each of them, and their agents, employees and servants, from ordering, requiring, commanding, or taking any other action that will result in violations of Plaintiffs' rights, Plaintiffs will suffer irreparable harm in that its/his rights, as afforded by Government Code §3300, et seq., will be violated without any remedy being afforded.

140.  Plaintiffs have attempted, without success, to exhaust any and all administrative remedies afforded to them to deal with these issues, but such efforts are futile as the named defendants are the ones that make the final decisions via any complaints, grievances or other administrative actions. Moreover, pursuant to Government Code §3309.5, Plaintiffs are not required to exhaust administrative remedies.

141.  Plaintiff requests this court to award damages and attorney fees pursuant to C.C.P. §1090 and 1095.

142.  In bringing this action, Petitioners have sought enforcement of an important right affecting the public interest which will result in the conferring of a significant benefit upon a large class of persons, to wit, public employees, thereby entitling Petitioners to an award of attorneys' fees pursuant to Code of Civil Procedure §1021.5.

143.  The actions of defendants, and each of them, were arbitrary and capricious and, therefore, Plaintiff is entitled to recover attorneys' fees pursuant to Government Code §800.

## THIRD CAUSE OF ACTION

### Against All Defendants

### Violation of Constitutional Right to Freedom of Speech

144.  Plaintiffs Santa Ana Police Officers Association and Gerry Serrano for a Third Cause of Action against all Defendants for violations of Plaintiffs' right to freedom

32

of speech and writing, freedom to instruct their representative, freedom to petition

government for redress of grievances, and to consult for the common good, re-allege

paragraphs 1-143, above, and further allege as follows:

145.  While the U.S. Constitution grants citizens protections for free speech

under the First Amendment to the U.S. Constitution, which are enforced via 42 USC

§1983, the California Constitution also protects this right. Article I, Section 2 of the

California Constitution states that "[e]very person may freely speak, write and publish

his or her sentiments on all subjects, being responsible for the abuse of this right. . . ."

Article I, Section 3 of the California Constitution states "[T]he people have the right to

instruct their representatives, petition government for redress of grievances, and

assemble freely to consult for the common good.

146.  Defendants, and each of them, have engaged in acts and/or omissions to

violate Plaintiffs right to freedom to speak, write and publish their sentiments, and/or

their ability to petition government for redress of grievances, assemble and to consult

for the common good.

147. The duty to obey the laws set forth in state and federal laws is a ministerial

duty and is not discretionary. By acting, and failing to act, as set forth above,

defendants have violated a ministerial duty. Moreover, the acts and/or omissions of

defendants, set forth above, demonstrate that defendants' failure to comply with the

California Constitution wherein it enjoins certain acts; therefore, defendants actions

were illegal as a matter of law under Government Code section 1222, which makes a

public officer's "willful omission to perform any duty enjoined by law" a misdemeanor.

148.  Each and every act listed above, individually or jointly, constitutes a

violation of Plaintiffs' speech rights and/or the California Constitution and therefore this

court should render all available and proper relief to remedy the violations and to

prevent future violations of a like or  similar nature. Plaintiffs specifically seek a "make

whole" remedy.

149.  For those acts identified in the already filed Government Tort Claim,

Plaintiffs further seek all available monetary damages and statutory penalties. For those acts not yet included in a filed and/or acted upon Government Tort Claim, Plaintiffs seek injunctive and/or mandamus remedies.

150.  The above articulated violations were proximately caused by City's deliberate indifference to its employees' violations law, and the failure to train and control its officers and representatives on the provisions of law referenced above. The violations set forth above were proximity caused by the customs, practices, policies and decisions of the defendants.

151.  Unless this court issues a preliminary and permanent injunction enjoining and restraining defendants, and each of them, and their agents, employees and servants, from ordering, requiring, commanding, or taking any other action that will result in violations of Plaintiffs' rights, Plaintiffs will suffer irreparable harm in that its/his rights will be violated without any remedy being afforded.

152.  Plaintiffs have attempted, without success, to exhaust any and all administrative remedies afforded to them to deal with these issues, but such efforts are futile as the named defendants are the ones that make the final decisions via any complaints, grievances or other administrative actions.

153.  Plaintiffs request this court to award damages and attorney fees as provided by law, including pursuant to C.C.P. §1090 and 1095.

154. In bringing this action, Petitioners have sought enforcement of an important right affecting the public interest which will result in the conferring of a significant benefit upon a large class of persons, to wit, public employees, thereby entitling Petitioners to an award of attorneys' fees pursuant to Code of Civil Procedure §1021.5.

155.  The actions of defendants, and each of them, were arbitrary and capricious and, therefore, Plaintiff is entitled to recover attorneys' fees pursuant to Government Code §800.

## **FOURTH CAUSE OF ACTION**

### Against All Defendants

34

<u>Violation of Labor Code §1101-1102.5</u>

156.  Plaintiffs Santa Ana Police Officers Association and Gerry Serrano for a Fourth Cause of Action against all Defendants for violation of provisions of the Labor Code re-alleges paragraphs 1-95, above, and further allege as follows:

157.  Labor Code section 1101 provides, in pertinent part, that no employer shall make, adopt, or enforce any rule, regulation, or policy: (a) Forbidding or preventing employees from engaging or participating in politics...(b) Controlling or directing, or tending to control or direct the political activities or affiliations of employees.

158.  Labor Code §1102 provides "No employer shall coerce or influence or attempt to coerce or influence his employees through or by means of threat of discharge or loss of employment to adopt or follow or refrain from adopting or following any particular course or line of political action or political activity.

159.  Labor Code §1102.5 provides that (a) An employer, or any person acting on behalf of the employer, shall not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency, to a person with authority over the employee, or to another employee who has authority to investigate, discover, or correct the violation or noncompliance, or from providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties. (b) An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose  information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an

investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

160.  Sections 1101 and 1102 protect "the fundamental right of employees in general to engage in political activity without interference by employers." (*Gay Law Students Assn*., 24 Cal.3d at 487 (quoting *Fort v. Civil Service Commission* (1964) 61 Cal.2d 331, 335).)

161.  As shown by the facts pled above, Defendants, and each of them, have engaged in acts and/or omissions that violated Labor Code §§1101 and/or 1102 to the detriment of Plaintiff Serrano, Plaintiff SAPOA, and those members of the SAPOA that support the SAPOA's actions.

162.  Defendants, and each of them, have engaged in retaliation against both Plaintiffs for disclosing information, or because the employer believed that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, wherein the employee had reasonable cause to believe that the information disclosed a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation.

163.  As a proximate result of Defendants willful, knowing and intentional violations of the Labor Code sections referenced above, Plaintiff Serrano has suffered and continues to suffer substantial losses in earnings and/or other employment benefits. As a legal result of the conduct of Defendants, and each of them, Plaintiff has suffered and will continue to suffer distress, suffering, anguish, fright, nervousness, grief, anxiety, worry, shame, mortification, injured feelings, shock, humiliation and indignity, as well as other unpleasant reactions, damages to reputation, and other non-

36

economic damages, in a sum to be ascertained according to proof. Said damages are of the type that any person would suffer as result of the illegal and wrongful conduct of Defendants; Plaintiff does not claim that he has suffered any psychiatric illness as a result of the conduct of Defendants. Plaintiff Serrano further seeks to recover all wages and benefits that Plaintiff would have earned if not discriminated against, retaliated against, or unlawfully harmed in amount to be proven at trial.

164.  Plaintiff SAPOA has incurred damages in the form of attorney fees, costs and nominal damages because of Defendants' violations of the Labor Code section cited above.

165.  The duty to obey the Labor Code sections set forth above is a ministerial duty and is not discretionary. By acting, and failing to act, as set forth above, defendants have violated a ministerial duty. Moreover, the acts and/or omissions of defendants, set forth above, demonstrate that defendants' failure to comply with the California Constitution wherein it enjoins certain acts; therefore, defendants actions were illegal as a matter of law under Government Code section 1222, which makes a public officer's "willful omission to perform any duty enjoined by law" a misdemeanor.

166.  The acts listed above, individually or jointly, constitute a violation of Plaintiffs' rights under the Labor Code and therefore this court should render all available and proper relief to remedy the violations and to prevent future violations of a like or similar nature. Plaintiffs specifically seek a "make whole" remedy.

167.  For those acts identified in the already filed Government Tort Claim, Plaintiffs seek all available monetary damages and statutory penalties. For those acts not yet included in a filed and/or acted upon Government Tort Claim, Plaintiffs seek injunctive and/or mandamus remedies. Plaintiffs are in the process of satisfying the Government Tort Claim requirement for those acts or omissions that were learned of and/or took place after the initial Tort Claim was filed and rejected; upon completion of that process, Plaintiffs will seek leave to amend the complaint to seek damages and/or civil penalties for the additional acts that recently occurred or were learned of.

168.  The above articulated violations were proximately caused by City's deliberate indifference to its employees' violations law, and the failure to train and control its officers and representatives on the provisions of law referenced above. The violations set forth above were proximity caused by the customs, practices, policies and decisions of the defendants.

169.  Unless this court issues a preliminary and permanent injunction enjoining and restraining defendants, and each of them, and their agents, employees and servants, from ordering, requiring, commanding, or taking any other action that will result in violations of Plaintiffs' rights, Plaintiffs will suffer irreparable harm in that its/his rights will be violated without any remedy being afforded.

170.  Plaintiffs have attempted, without success, to exhaust any and all administrative remedies afforded to them to deal with these issues, but such efforts are futile as the named defendants are the ones that make the final decisions via any complaints, grievances or other administrative actions.

171.  Plaintiff requests this court to award damages and attorney fees as provided by law, including pursuant to C.C.P. §1090 and 1095.

172.  In bringing this action, Plaintiffs have sought enforcement of an important right affecting the public interest which will result in the conferring of a significant benefit upon a large class of persons, to wit, public employees, thereby entitling Petitioners to an award of attorneys' fees pursuant to Code of Civil Procedure §1021 .5.

173. The actions of defendants, and each of them, were arbitrary and capricious and, therefore, Plaintiff is entitled to recover attorneys' fees pursuant to Government Code §800.

## FIFTH CAUSE OF ACTION

Against City, Police Department, Valentin, Ridge and Carvalho

Violation of Penal Code §§832.5-832.8/Evidence Code §1043-1046

174.  Plaintiffs Santa Ana Police Officers Association and Gerry Serrano for a Fifth Cause of Action against all Defendants for violations of Penal Code §§832.5-832.8

38

1  and/or Evidence Code §§1043-1046 re-alleges paragraphs 1-95, above, and further

2  allege as follows:

3      175.  Penal Code 832.5(a) (1) provides "Each department or agency in this state

4  that employs peace officers shall establish a procedure to investigate complaints by

5  members of the public against the personnel of these departments or agencies, and

6  shall make a written description of the procedure available to the public."

7  176.Penal Code §832.7(f) (1) mandates that "The department or agency shall provide

8  written notification to the complaining party of the disposition of the complaint within 30

9  days of the disposition."

10     177.  The City of Santa Ana and Santa Ana Police Department have established

11 and published procedures for receiving and investigating complaints. The established

12 procedures state that complaints will investigated and the party submitting the

13 complaint will be notified of the results by mail.

14     178.   The procedure for addressing citizen complaints that the department has

15 established and published obligated the department to conduct an investigation into the

16 allegations of the complaint that was sufficient to allow a decision-maker make one of

17 four possible findings, and the procedure obligated the Chief of Police to make one of

18 those findings with respect to each allegation of misconduct. Defendants did not comply

19 with these obligations and Plaintiffs are entitled to a writ of mandate compelling

20 defendants to perform their ministerial duty to satisfy the obligations imposed by the

21 department's published procedure. (See *Galzinski v. Somers*, (2016) 2 Cal.App.5[th]

22 1164).

23     179.  Plaintiffs filed complaints and requests for investigations and Defendants

24 failed to either investigate the allegations of misconduct (which were also violations of

25 state law and possible misdemeanor offenses) and/or refused to notify Plaintiff SAPOA

26 of the outcome of the investigation.

27     180.  Defendants had a ministerial duty to investigate the SAPOA's and/or

28 Serrano's citizen's complaint and to render a finding on that complaint in compliance

1    with the complaint procedure the department established and made public pursuant to

2    subdivision (a)(1) of Penal Code section 832.5. (See *Gregory v. State Bd. of Control*

3    (1999) 73 Cal.App.4th 584 ('[a] public entity has a ministerial duty to comply with its

4    own rules and regulations where they are valid and unambiguous); *Pozar v. Department*

5    *of Transportation* (1983) 145 Cal.App.3d 269 (a writ of mandate may be issued to

6    compel a public agency to follow its own internal procedures.).

7         181.  A writ of mandate may be issued by any court to any inferior tribunal,

8    corporation,  board, or person, to compel the performance of an act which the law

9    specially enjoins, as a duty resulting from an office, trust, or station." (Code Civ. Proc., §

10   1085, subd. (a).) Indeed, "[t]he writ must be issued in all cases where there is not a

11   plain, speedy, and adequate remedy, in the ordinary course of lawupon the verified

12   petition of the party beneficially interested." (Id. , § 1086.) In essence, "[m]andamus lies

13   to compel the performance of a clear, present, and ministerial duty where the petitioner

14   has a beneficial right to performance of that duty." (*Carrancho v. California Air*

15   *Resources Board* (2003) 111 Cal.App.4th 1255 1265) "A duty  is ministerial when it is

16   the doing of a thing unqualifiedly required." (*Redwood Coast Watersheds Alliance v.*

17   *State Bd. of Forestry & Fire Protection* (1999) 70 Cal.App.4th 962, 970).

18        182.  Plaintiffs seek a writ of mandate commanding Defendants to investigate

19   Plaintiff's complaint regarding the release of the confidential information and to inform

20   Plaintiff of the outcome of that investigation. Plaintiff further seeks an order of the court

21   mandating that Defendants, and each of them, fully investigate any and all complaints

22   made to the City of Santa Ana/Santa Ana Police Department regarding the misconduct

23   of police department employees/officials.

24        183.  Furthermore, Penal Code §832.5-832.8 requires Defendants to maintain as

25   confidential peace officer personnel files/information. The only manner in which the

26   information can be released to third parties is through compliance with Evidence Code

27   §§1043-1046.

28        184.  Plaintiff Serrano was issued punitive action by Defendant Ridge, and then

1   Defendant Ridge and/or Carvalho released copies of the punitive action to elected
2   Council members and media sources without complying with the legal requirements set
3   forth above.

4        185.  The duty to obey the laws set forth in Penal Code § §832.5-832.8 and/or
5   Evidence Code §§1043-1046, is a ministerial duty and is not discretionary. By acting,
6   and failing to act, as set forth above, defendants have violated a ministerial duty.
7   Moreover, the acts and/or omissions of defendants, set forth above, demonstrate that
8   defendants' failure to comply with Penal Code §§832.5-832.8 and/or Evidence Code
9   §1043-1046 was illegal as a matter of law under Government Code section 1222, which
10   makes a public officer's "willful omission to perform any duty enjoined by law" a
11   misdemeanor.

12        186.  As a result of Defendants' unlawful action, Plaintiff Serrano has suffered
13   and will continue to suffer distress, suffering, anguish, fright, nervousness, grief,
14   anxiety, worry, shame, mortification, injured feelings, shock, humiliation and indignity,
15   damages to reputation, and other non-economic damages, in a sum to be ascertained
16   according to proof. Said damages are of the type that any person would suffer as result
17   of the illegal and wrongful conduct of Defendants; Plaintiff does not claim that he has
18   suffered any psychiatric illness as a result of the conduct of Defendants.

19        187.  Plaintiffs have no plain, speedy or adequate remedy under the law.
20   Plaintiffs have attempted to exhaust all administrative remedies to redress the violation
21   of their rights.

22        188.  Plaintiffs request this court to award ancillary damages pursuant to C.C.P.
23   §1090 and 1095.

24        189.  The actions of defendants, and each of them, were arbitrary and capricious
25   and, therefore, Plaintiffs are entitled to recover attorneys' fees pursuant to Government
26   Code §800.

27        190.  The success of Plaintiffs in this action will result in the enforcement of an
28   important right affecting the public interest in that a significant benefit will be conferred

41

COMPLAINT

1  on a large class of persons, that is, public employees, and the necessity and financial

2  burden of private enforcement of said benefit are such as to make appropriate the

3  award of attorney fees pursuant to California Code of Civil Procedure §1021.5.

4  **SIXTH CAUSE OF ACTION**

5  (Violation of FEHA (Government Code § 12900, et seq.)

6  Retaliation for Engaging in Protected Activity

7  (Against City of Santa Ana/Santa Ana Police Department)

8      191.  The allegations set forth in paragraphs 1 through 190 are re-alleged and

9  incorporated herein by reference.

10      192.  Plaintiffs filed complaints with the City of Santa Ana, via Defendant Ridge

11  and/or Motsick regarding allegations of gender discrimination and/or harassment.

12  Furthermore, Defendants Ridge, Motsick and Carvalho believed that Plaintiffs had or

13  would file complaints against Ridge for allegations of sexual harassment. In retaliations

14  for Plaintiffs filing complaints, and/or the fear that additional complaints would be made,

15  defendants engaged in actions such as issuing punitive action, causing Plaintiff Serrano

16  to be subject to improper investigations, placed on administrative leave, and/or to

17  implement other adverse employment action against Plaintiff Serrano.

18      193.  Plaintiffs complained to Defendants about the inappropriate actions

19  (discrimination, harassment and/or retaliation), but nothing was done and the retaliation

20  continued unabated. On the basis of the above, Plaintiffs believe and allege that

21  Defendants retaliated against them for their complaints of gender discrimination, sexual

22  harassment, and/or retaliation.

23      194.  Plaintiffs reporting of unlawful actions were motivating factors in

24  Defendants' decision not to implement adverse employment actions against Plaintiff

25  Serrano.

26      195.  Defendants' conduct, as alleged, violated the Fair Employment and

27  Housing Act, Government Code section 12900, et seq., and Defendants committed

28  unlawful employment practices.

42

196.  As a proximate result of Defendants' willful, knowing, and intentional discrimination/harassment/retaliation against Plaintiff, Plaintiff has sustained and continues to sustain damages, humiliation, distress, pain and anguish, all to his damage in a sum according to proof.

197.  Plaintiffs have incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiffs are entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

198.  Plaintiffs further request that the Court render appropriate injunctive or other extraordinary relief to remedy these violations and to prevent future violations of a like or similar nature, including, but not limited to, the granting of a permanent injunction requiring the Defendants, upon receiving notification of conduct which may violate the California Department of Fair Employment and Housing regulations or California whistleblower statutes, to promptly conduct a fair and thorough investigation into the allegations and not allow retaliatory actions to be taken against the employees.

199.  Plaintiff requests this court to award ancillary damages pursuant to C.C.P. §1090 and 1095.

200.  The actions of defendants, and each of them, were arbitrary and capricious and, therefore, Plaintiff is entitled to recover attorneys' fees pursuant to Government Code §800.

201.  The success of Plaintiff in this action will result in the enforcement of an important right affecting the public interest in that a significant benefit will be conferred on a large class of persons, that is, public employees, and the necessity and financial burden of private enforcement of said benefit are such as to make appropriate the award of attorney fees pursuant to California Code of Civil Procedure §1021.5

202.  Plaintiff obtained a Right to Sue letter from the DFEH, and served the same on defendants via the City Clerk's office.

**WHEREFORE**, Plaintiff prays for judgment against Defendants and each of them

as follows:

FIRST CAUSE OF ACTION

1. Any and all appropriate injunctive or other extraordinary relief afforded under Government Code §3500, et seq., to remedy the violation and to prevent future violations of a like or similar nature, including, but not limited to, the granting of a temporary restraining order, preliminary injunction, or permanent injunction prohibiting Defendants, and each of them, and their agents, representatives, employees, servants and/or investigators from violating Government Code §3500, et seq.

2. For those matters already identified in Plaintiffs' Government Tort Claims, any and all damages and/or civil penalties afforded under the law.

SECOND CAUSE OF ACTION

3. Any and all appropriate injunctive or other extraordinary relief afforded under Government Code §3309.5(d) to remedy the violation and to prevent future violations of a like or similar nature.

4. For those matters already identified in Plaintiffs' Government Tort Claims, any and all damages and/or civil penalties afforded under the law.

THIRD CAUSE OF ACTION

5. Any and all appropriate injunctive or other extraordinary relief afforded under the law to remedy the violation and to prevent future violations of a like or similar nature.

6. For those matters already identified in Plaintiffs' Government Tort Claims, any and all damages and/or civil penalties afforded under the law.

FOURTH CAUSE OF ACTION

7. Any and all appropriate injunctive or other extraordinary relief afforded under the law to remedy the violation and to prevent future violations of a like or similar nature.

8. For those matters already identified in Plaintiffs' Government Tort Claims, any and all damages and/or civil penalties afforded under the law.

44

FIFTH CAUSE OF ACTION

9.   A declaration of the Court that the Defendants violated Penal Code §832.5-832.7 and/or Evidence Code §§1043-1046 and that Plaintiffs are entitled to the full relief afforded under Penal Code §832.5-832.7 and/or Evidence Code §§1043-1046.

10.   Any and all appropriate injunctive or other extraordinary relief afforded under the law to remedy the violation and to prevent future violations of a like or similar nature.

11.   For those matters already identified in Plaintiffs' Government Tort Claims, any and all damages and/or civil penalties afforded under the law.

SIXTH CAUSE OF ACTION

12.   Any and all appropriate injunctive or other extraordinary relief afforded under the law to remedy the violation and to prevent future violations of a like or similar nature.

13.   For those matters already identified in Plaintiffs' Government Tort Claims, any and all damages and/or civil penalties afforded under the law.

ALL CAUSES OF ACTION

14.   An award ancillary damages pursuant to C.C.P. §1090 and 1095.

15.   For all matters covered by Plaintiffs' Government Tort Claim(s), all damages which the Plaintiffs have sustained as a result of Defendants' conduct, including general damages for pain, suffering, distress, and special damages for lost compensation, including back, front pay, job benefits that he would have received but for the discriminatory practices of Defendants, damages for anguish, fright, nervousness, grief, anxiety, worry, shame, mortification, injured feelings, shock, humiliation and indignity, as well as other unpleasant physical, mental, and emotional reactions ordinarily to be expected, damages to reputation, and other non-economic damages, to the extent permitted by law and in a sum to be ascertained according to proof;

16.   For all matters covered by Plaintiffs' Government Tort Claim(s), other actual, consequential, and/or incidental damages, and/or statutory penalties in a sum to be

45

1    ascertained according to proof;

2        17. Attorneys' fees pursuant to Government Code §800.

3        18.  Attorney fees pursuant to California Code of Civil Procedure §1021.5

4        19.  Attorney fees as provided by any other law and/or statutes

5        20. That Defendants takes nothing by virtue of this action;

6        21.  For cost of suit and attorney's fees incurred herein; and

7        22. For such other and further relief as the Court may deem just and proper/

8

9    DATED: November ___, 2021          COREY W. GLAVE, ATTORNEY AT LAW

10                                     By:_____
                                            Corey W. Glave
11                                          Attorneys for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

**VERIFICATION**

The undersigned declares as follows:

I am the attorney of record for all plaintiffs in this action.  I am verifying this Complaint on the basis that all named plaintiffs are absent from the county where I have my office.  I have read the foregoing COMPLAINT, and know the contents thereof. The contents are true, except as to the matters which are therein stated on information or belief, and as to those matters I believe them to be true and Plaintiffs are acting in good faith in bringing forward such allegations.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

/S/    Corey Glave

_____

COREY GLAVE

COMPLAINT